# CIRCUIT COURT OF FAIRFAX COUNTY

Erie Insurance Exchange

v.

Charles Sipos,
d/b/a Quality
Contractors Co., et al.

February 5, 2004

Case No. (Law) 203209

BY JUDGE ARTHUR B. VIÉREGG, JR.

This matter came before me on January 23, 2004, on Plaintiff, Erie Insurance Exchange's (Erie), motion for summary judgment, and Defendant, First Preston Management's (FPM), cross-motion for summary judgment. After hearing argument, I took the matter under advisement and directed the parties to furnish cases from other jurisdictions relating to the issue of how the intentional conduct exclusion at issue had been construed. Erie's counsel, Mr. Prior, submitted additional cases for consideration, and FPM's counsel declined to do so, stating he had found no cases on point. After considering the arguments of counsel and the additional materials, I am prepared to give the parties my decision. I will also explain my other rulings in terms of coverage that I made from the bench.

## I. *Facts*

Erie issued a "Fivestar Contractors' Policy" (The Policy) providing insurance coverage to Charles Sipos, doing business as Quality Contractors Co. (QC), for the period of March 16, 1999, to March 16, 2000. FPM

transacts business in Virginia as a foreclosure property manager. FPM subcontracts with other companies to conduct the debris clean-up on Housing and Urban Development (HUD) properties which have been foreclosed upon in preparation for resale by HUD. QC was a subcontractor whom FPM contracted with to engage in the debris clean-up.

Defendants Jacobs bought a Reston condominium from HUD on December 17, 1999. FPM issued QC a work order directing the removal of any debris remaining on the premises. Pursuant to this directive, QC obtained a key for the property on December 18, 1999. It is undisputed that QC was never informed that the Jacobs purchased the condominium or that they had moved some of their belongings onto the premises. On December 28, 1999, employees of QC went to the condominium with a moving van and proceeded to remove all of the property present in the unit. The Jacobs later arrived at the home to find all of their possessions removed, and alleged damage to the home. The Jacobs claim that QC knew or should have reasonably known from the way the property was arranged in the house that it was occupied and intentionally removed the items despite this knowledge.

Erie agreed to defend QC's interests in suits against the Jacobs subject to a reservation that The Policy did not require them to either defend or indemnify QC under the circumstances. The instant declaratory judgment suit was filed by Erie to determine its duties under The Policy. Erie filed an amended motion for declaratory judgment on April 14, 2003.

In its motion for declaratory judgment, Erie asserts that it is not required to defend or indemnify QC under three theories. First, Erie maintains that the actions taken by QC in removing the Jacobs' property from the condominium do not constitute an "occurrence" within the meaning of The Policy's terms. Second, Erie avers that the loss that is being claimed by the Jacobs is not the type of loss covered by The Policy, because the actions were intentional and expected. Finally, Erie asserts that The Policy does not cover property damage that results from "faulty work."

## II. *Cross-Motions for Summary Judgment*

Summary judgment is appropriate where there are no material facts that are genuinely in dispute. Va. Sup. Ct. Rule 3:18. Merely because the parties have submitted cross-motions for summary judgment, each representing that there are no material facts in dispute, does not relieve a court of its duty to ascertain whether a dispute of fact actually exists. *Central Nat. Ins. v. Virginia Farm Bur. Ins.*, 222 Va. 353, 356 (1981).

Erie's motion for summary judgment is based on the same three assertions stated in its motion for declaratory judgment. I will discuss each of these three issues in turn.

## A. *Occurrence*

According to the terms of The Policy, an "occurrence" "means an accident, including continuous or repeated exposure to the same general harmful conditions." Page 6 of The Policy. Erie asserts that QC's removal of the Jacobs' property was not accidental, because, pursuant to their work order from FPM, they intended to remove any debris present on the premises. In *Wooden v. John Hancock Mutual Life Ins. Co.*, 205 Va. 750, 754-55 (1965), the Supreme Court of Virginia defined an accident as "an event that takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency, often; an undesigned and unforeseen occurrence of an afflicted or unfortunate character. . . ."[1] Whether the incident was unexpected or not is to be determined from the viewpoint of the insured. See *Utica Mutual Ins. Co. v. Travelers Indemnity Co.*, 223 Va. 145, 147 (1982). It is undisputed that QC knew it was going to be removing property from the particular premises, planned to do so far in advance, and intended to clear out the condominium. However, in QC's responses to Erie's requests for admissions, they expressly state that they did not expect to remove and discard the Jacobs' property and that their actions were accidental because they were not informed by FPM that the condominium had been purchased and that they were removing the current owner's property rather than "debris."[2] I find that, from the perspective of QC, the insured, the removal and discarding of the Jacobs' personal property was unexpected and, therefore, constitutes an "occurrence" within the meaning of The Policy's terms.

## B. *Intentional Conduct*

Closely linked to Erie's "occurrence" argument is its argument that The Policy excludes coverage for "injury or damage expected or intended from the standpoint of anyone we protect." Page 19 of The Policy. Erie maintains

---

[1] Accident is defined in *Webster's New World Dictionary* 7 (2d College Ed. 1980) as: "1. a happening that is not expected, foreseen, or intended 2. an unpleasant and unintended happening, sometimes resulting from negligence, that results in injury, loss, damage, etc."

[2] In Erie's motion for summary judgment, it is stated that "Quality Contractors *mistakenly* considered the Jacobs' personal property debris and removed and disposed of such property." Page 7 (emphasis added).

that the loss complained of by the Jacobs was the removal of their personal property from the condominium. Erie asserts that, because QC was acting as requested in the work order, its conduct was expected and the removal of the property on premises was intentional. In both parties' respective motions for summary judgment, no Virginia authority was provided relating specifically to the issue of intentional conduct excluding from coverage liability for an occurrence. Nor has any such authority been found by this court. Thus, it would appear that this is a matter of first impression in Virginia.

In response to my request that counsel provide authority from other jurisdictions on this point, Erie's counsel, Mr. Prior, provided some cases for consideration. Erie relies primarily on *Casualty Reciprocal Exchange v. Thomas*, 647 P.2d 1361 (Kan. App. 1982), and *Frankenmuth Mut. Ins. Co. v. Masters*, 595 N.W.2d 832 (Mich. 1999). Each stands for the proposition that injuries that are the natural and probable result of an intended act, constitute intentional injuries. However, I find that these cases are distinguishable from the matter before me.

In *Thomas*, the defendant pointed a gun at the injured party and pulled the trigger. The defendant unsuccessfully argued that he did not intend to injure the victim by his actions, and therefore the injuries should be covered by his insurer. The Court of Appeals of Kansas rejected this argument, finding that the injuries were a natural and probable consequence of his firing a gun at the victim. *Thomas*, 647 P.2d at 720-21. In *Masters*, the defendants intentionally set a fire in their clothing store intending the smoke from the fire to damage their clothing inventory. The fire damaged both the defendant's clothing store and neighboring businesses. The Supreme Court of Michigan held that the insurance policy did not cover any of the damage caused by the fire because the defendants intended to cause property damage to their own property. *Masters*, 595 N.W.2d at 116-17. Yet, the facts here do not indicate that QC intended to cause any harm or injury to anyone in performing the task of debris removal. While the act of removing the Jacobs' personal property was intended, it was perceived that these were abandoned items and that no injury to anyone would ensue. Therefore, the "intentional conduct" exclusion is inapplicable, especially since the exclusion must be construed against the insurance company and in favor of coverage. See *Aetna Ins. Co. v. Carpenter*, 170 Va. 312, 327 (1938).

## C. *"Faulty Work"*

Erie next contends its coverage liability is negated by a provision in The Policy excluding coverage of specific types of property damage. Specifically, The Policy states that it does not cover property damage to

"that particular part of any property that must be restored, repaired, or replaced because your work was faulty." Page 21, 7(e), of The Policy (emphasis in original). Under The Policy, "your work" is defined as:

1. work or operations performed by you or on your behalf;
2. materials, parts, or equipment furnished in connection with such work or operations.

Page 7 of The Policy. Erie maintains that the exclusion applies under these circumstances because the Jacobs did not want their property removed and discarded and, therefore, QC's work was faulty because they mistakenly thought the property was debris. In response, FPM avers that QC did not perform its task under the work order in a faulty manner but rather appropriately complied with the directive to remove the contents on the premises.

Again, terms of an insurance policy are to be construed most strictly against the insurer. See *Carpenter*, 170 Va. at 327. The exclusion is triggered only when the insured's *work* was faulty and results in damage to specific property. Strictly construing the scope of this exclusion against Erie, I conclude that QC's actions of removing and discarding the property do not constitute faulty work. QC acted within the scope of the work order's request by removing the property remaining on the premises, and it is undisputed that QC had no knowledge that such property was owned by current occupants. If the scope of what constituted "your work" under the terms of The Policy were not limited, *any* deficiency in performance would result in exclusion from coverage, rendering the insurance policy worthless.

## III. *Conclusion*

I find that there are no material facts genuinely in dispute. Further, I find that QC's removal of the Jacobs' property constitutes an "occurrence" within the meaning of The Policy. I also find that Erie's liability is not otherwise vitiated either by the "expected or intended" injury exclusion, or the "faulty work" exclusion. Because I find that Erie owed both a duty to defend and a duty to indemnify Quality Contractors under the terms of The Policy, Erie's motion for summary judgment is denied, and First Preston Management's cross-motion for summary judgment is granted.