(647 P.2d 1361)

No. 53,552

CASUALTY RECIPROCAL EXCHANGE, *Appellee,* v. DONALD N. THOMAS, *Defendant,* and JAMES WARDEN, *Appellant.*

Petition for review denied September 17, 1982.

Opinion filed July 15, 1982.

*James W. Dahl,* of Kansas City, for the appellant.

*J. Eugene Balloun* of Balloun & Bodinson, Chartered, of Olathe, for the appellee.

Before SPENCER, P.J., PARKS, J., and RONALD D. INNES, District Judge Assigned.

INNES, J.: This is an appeal from the declaratory judgment of the trial court by the intervenor James Warden. The plaintiff-appellee, Casualty Reciprocal Exchange, successfully sought declarations from the trial court which related to the appellee's duties to the defendant, Donald N. Thomas, who was insured by the appellee under a homeowner's policy which provided personal liability coverage.

Appellant Warden's interest in this action stems from an April 1, 1977, incident whereby he was injured as a result of being shot by a bullet from a handgun held and aimed at him by Thomas. The policy of insurance written by the appellee was in force on the date of the shooting. Following the filing of this action, Warden filed an action against Thomas for damages. An answer with general denial was timely filed on Thomas' behalf. That action was then stayed, pending the outcome of appellee's request for declaratory judgment in this action, relieving it from any obligation under the policy as a result of the shooting.

The contract of insurance between the appellee and Thomas included, in pertinent part, the following:

"This Company agrees to pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage, to which this insurance applies, caused by an occurrence. This Company shall have the right and duty, at its own expense, to defend any suit against Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, but may make such investigation and settlement of any claim of suit as it deems expedient . . . .

"*This policy does not apply:*

"1. Under coverage E - Personal Liability Coverage F - Medical Payments to Others:

"f. To bodily injury or property damage which is either expected or intended from the standpoint of the Insured."

The trial court's findings of fact were as follows:

"On the evening of April 1, 1977, Thomas became highly upset over the conduct of juveniles who were having a party at a residence just north of his own. At about 8:15 on that evening, the Lansing Police Department dispatched a unit to Thomas' residence due to a complaint by Thomas that the juveniles were driving cars through his lawn. During their conversation, Thomas told the officer that the next time such an incident happened, he was going to take care of the situation himself and then call the police. After speaking with Thomas concerning his complaints, the officer left to pursue a passing vehicle which Thomas had identified as one of those which had damaged his yard. The officer then returned to routine patrol. Following these events, one Bart Kosko backed his car onto Thomas' driveway to allow another car to leave the party. After the other car had exited, as Kosko began to pull out of Thomas' driveway, he heard a scraping noise at the back of his car. His car door was then yanked open and he was struck in the head by a pistol in Thomas' hand. Thomas then pressed the gun against Kosko's left temple. Thomas was in a state of uncontrolled anger. Almost immediately, James Warden ran up to within three to five feet of Kosko's vehicle and stopped, with the open door between Thomas and Warden. Warden asked what was happening, but did not touch or make any contact with Thomas. Thomas turned the gun toward Warden with his arm extended. His arm did not bump or come into contact with anything. Thomas fired the gun and Warden fell to the ground."

The trial court concluded that Warden's injuries were intentionally caused by Thomas, and under the exclusionary clause of the policy the appellee had no duty to defend or indemnify Thomas.

The appellant argues that the trial court committed error by finding that (1) there was no duty to defend; (2) there was no duty to indemnify; and (3) there was no coverage under the policy.

As a general proposition the duty to defend under the policy is not parallel to coverage under the policy. The duty to defend

arises whenever there is a potential of liability under the policy. If, based on all information known or reasonably ascertainable by the insured, there is a possibility of coverage under the policy, the insurer has a duty to defend. *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 686, 512 P.2d 403 (1973). However, if there is no coverage under the policy there is no duty to defend. *U.S. Fidelity & Guaranty Co. v. Continental Ins. Co.,* 216 Kan. 5, 8, 531 P.2d 9 (1975); *Krings v. Safeco Ins. Co. of America,* 6 Kan. App. 2d 391, Syl. ¶ 3, 628 P.2d 1071 (1981).

This declaratory judgment action was brought by the plaintiff to determine the question of coverage under the policy. The tort action against the insured has been stayed pending the outcome of this action. If it is determined here that there is no coverage, then there is no duty to defend. *U.S. Fidelity,* 216 Kan. 5; *Krings,* 6 Kan. App. 2d 391; Annot., 50 A.L.R.2d 458, § 2 (b); 20 Appleman, Insurance Law and Practice § 11354; 18 Couch on Insurance 2d §§ 74:145-150. Therefore, the resolution of this issue depends on the resolution of the issue regarding coverage under the policy.

Similarly there is no duty to indemnify under the policy if there is no coverage. Again, this issue also depends on a resolution of the issue as to coverage under the policy.

The trial court's findings of fact were that Thomas pointed a gun at the appellant and fired. The bullet struck and injured the appellant. Thomas did not touch or bump anything prior to firing at the appellant. These findings are not disputed on appeal, and will not be discussed beyond noting that the findings are supported by the evidence.

The court concluded, based on *Rankin v. Farmers Elevator Mutual Insurance Company,* 393 F.2d 718 (10th Cir. 1968), that appellant's injuries were intentionally caused by Thomas and thus there was no coverage under the policy. The essence of the appellant's argument here is that there was no evidence that Thomas intended to injure the appellant by his actions, citing *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, for the proposition that an unintended injury resulting from an intentional act would be covered. In *Spruill,* the defendants were towing away plaintiff's pickup truck. Plaintiff attempted to stop them and alleged that in the process defendants drove over his foot. There the court indirectly recognized that an intentional

act may result in an unintentional injury by saying that the intentional act of taking possession of the truck did not cause the injury, rather the cause was the manner in which the truck was being moved.

The facts there are distinguishable from this case, where here one person aimed a gun at another and fired it. Under these facts, to say that the act of aiming and firing the gun was intentional, but the injury was not, draws too fine a distinction. The better rule is found in *Rankin,* where it was held that where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional.

This result follows from the well-established presumption in both tort and criminal law that persons are presumed to intend the natural and probable consequences of their actions. See Prosser, Law of Torts § 8 (4th ed. 1971); Restatement (Second) of Torts § 8A, comment (b); 86 C.J.S., Torts § 20; and PIK Crim. 54.01. Although there are no Kansas cases directly on point, there are numerous cases in other jurisdictions. See Annot., 2 A.L.R.3d 1238, 1243, § 4(a), (b) and pp. 87-91 (1981 Supp.). It should be noted that although this is a rebuttable presumption or inference, there is no evidence here tending to rebut the presumption.

We believe that a liability policy provision excluding coverage for injuries expected or intended from the standpoint of the insured would exclude from coverage an injury in which it was shown that the insured injured another by aiming and firing a pistol at the injured person at close range, where there is no evidence offered in explanation that the insured had not intended or expected the injuries.

The trial court appropriately resorted to the presumption that persons are presumed to intend the natural and probable consequences of their actions. The trier of fact was free to accept or reject this inference of intent. The inference could be considered along with the other evidence in the case. The record is void of evidence that the injury was not intended or expected by the insured.

Affirmed.