No. 95,202

RENE THOMAS, AS PARENT AND NATURAL GUARDIAN OF JULIANA SANCHEZ AND VIVIANA SANCHEZ, MINORS AND HEIRS AT LAW OF RAMON SANCHEZ; AND VICTOR REYES, *Appellees,* v. BENCHMARK INSURANCE COMPANY, *Appellant.*

(179 P.3d 421)

Opinion filed March 28, 2008.

*J. Franklin Hummer*, of Shawnee Mission, argued the cause and was on the brief for appellant.

*Mark Beam-Ward*, of Hill, Beam-Ward, Kruse, & Wilson, LLC of Overland Park, argued the cause and was on the brief for appellees.

The opinion of the court was delivered by

NUSS, J.: This case concerns a dispute about automobile liability insurance. While fleeing police, Melissa Gutierrez lost control of the car she was driving at a high rate of speed, killing her and passenger Ramon Sanchez and injuring passenger Victor Reyes. In a declaratory judgment action, Reyes and Rene Thomas, as parent and natural guardian of minors and heirs at law of Sanchez, sought a ruling that Gutierrez' Benchmark Insurance Company policy provided coverage. The district court entered summary judgment against Benchmark; a divided panel of our Court of Appeals reversed in *Thomas v. Benchmark Ins. Co.*, 36 Kan. App. 2d 409, 140 P.3d 438 (2006). We granted review; our jurisdiction is pursuant to K.S.A. 20-3018(b).

The issues on appeal, and our accompanying holdings, are as follows:

1. Does the policy's intentional act exclusion bar coverage? Yes.

2. Does the illegal act exclusion bar coverage? Moot.

Accordingly, the judgment of the Court of Appeals reversing the district court is affirmed; the judgment of the district court is reversed.

## FACTS

On November 8, 2003, Victor Reyes, Ramon Sanchez, and Melissa Gutierrez entered a pub in Overland Park. After consuming alcohol, Reyes and Sanchez became involved in a fight that moved

outside. Eventually, Sanchez and Reyes got into Gutierrez' car, with Sanchez in the front passenger seat and Reyes in the back. Sanchez then pulled a handgun and, when the car was moving, fired approximately 10 times in the general direction of a group of six or seven people. Once Sanchez' gun was empty, Gutierrez drove away.

A police officer observed the car traveling north on Interstate 35 in excess of 80 miles per hour. While attempting to catch the car, the officer next spotted it on Interstate 635. After the officer activated his lights, Sanchez threw the gun out of the car. Eventually, Gutierrez pulled onto the highway shoulder. After the officer stopped and backup arrived, both officers exited their cars. But before Gutierrez could be ordered from the car, she drove away. According to Reyes, Gutierrez took off despite protest from both passengers.

The officer lost sight of Gutierrez' car as it exited Interstate 635 onto Shawnee Drive. While proceeding on Shawnee Drive, Gutierrez lost control; her car flipped several times and Sanchez was thrown from the car. Gutierrez and Sanchez died, and Reyes, who was wearing a seatbelt, survived with several injuries.

Reyes and Rene Thomas (Plaintiffs) filed a declaratory judgment action against Benchmark Insurance Company seeking a determination of the parties' rights under the automobile liability policy issued to Gutierrez. Benchmark responded that insurance coverage was barred due to (1) the criminal conduct of the driver and passengers—the "illegal act exclusion"—and (2) the intentional conduct of Gutierrez—the "intentional act" exclusion.

Plaintiffs moved for summary judgment. The parties later stipulated to the facts as provided in the police records, which included a statement given by Reyes to police in the early morning hours of November 9, 2003, for the limited purpose of the summary judgment motion.

After a hearing, the district court granted summary judgment for plaintiffs. The court concluded that the illegal act exclusion did not apply but did not address the intentional act exclusion.

A majority panel of the Court of Appeals reversed the district court, holding that Gutierrez' excessive speeding prohibited recov-

ery under the intentional act exclusion. *Thomas v. Benchmark Ins. Co.*, 36 Kan. App. 2d 409, 421, 140 P.3d 438 (2006). The majority also agreed with the district court that the policy's "illegal act" exclusion did not apply. Judge Bukaty dissented from the majority's conclusion that Gutierrez' intentional conduct precluded coverage under the policy. 36 Kan. App. 2d at 426-31.

Plaintiffs petitioned for review, and Benchmark cross-petitioned; this court granted review. More facts will be provided as necessary to the analysis.

## ANALYSIS

Issue 1: *The intentional act exclusion bars coverage.*

*Standard of Review*

The parties stipulated to the facts as provided in the police records for the limited purpose of the summary judgment motion. Moreover, we must interpret the insurance contract. Our review is therefore de novo. See *Roy v. Young*, 278 Kan. 244, 247, 93 P.3d 712 (2004) (Where there is no factual dispute, appellate review of an order granting summary judgment is de novo.); see *Marshall v. Kansas Med. Mut. Ins. Co.*, 276 Kan. 97, 111, 73 P.3d 120 (2003) (Review of the interpretation of insurance contracts is unlimited.).

*Arguments*

According to the Benchmark policy's initial grant of coverage, Benchmark agreed to pay: "**damages** for **bodily injury** or **property damage** for which **you** or any **family member** becomes legally responsible because of an **auto accident**." The policy defined an auto accident as "an unexpected and unintended event that causes **bodily injury** or **property damage** and arises out of the ownership, maintenance or use of an **auto** or other **motor vehicle**."

After the policy's initial grant of coverage, it excluded, among other things, "**bodily injury** caused *intentionally* by **you** or any **family member** or at **your** or any **family member's** direction." (Emphasis added.) Plaintiffs argue that the Court of Appeals majority erred in reversing the district court's summary judgment order on the basis of this intentional act exclusion. While they admit

Gutierrez drove recklessly or wantonly and at excessive speeds, they assert that her loss of vehicle control was not intentional. Plaintiffs claim that under the majority's rationale, an insurance company could simply deny coverage any time a wreck occurred if the driver committed a traffic violation, *e.g.*, speeding.

As we understand Benchmark's response, it takes no issue with the initial grant of coverage; rather, it simply argues that this intentional act exclusion barred coverage otherwise existing because the wreck and injuries were "natural and probable consequences" of Gutierrez' intentional act of driving at an excessive rate of speed. It cites, *inter alia*, *State Farm Fire & Cas. Co. v. Falley,* 23 Kan. App. 2d 21, 926 P.2d 664 (1996), *rev. denied* 261 Kan. 1086 (1997). Benchmark has the burden to demonstrate that the exclusion applies. See *Buchanan v. Employer's Mutual Liability Ins. Co.,* 201 Kan. 666, Syl. ¶ 2, 443 P.2d 681 (1968).

Relying upon its interpretation of this court's prior decisions, the Court of Appeals majority felt obligated to apply the natural and probable consequences test. It determined that the injuries were intentionally caused and therefore excluded coverage. 36 Kan. App. 2d at 418. The dissent essentially urged application of a test that required Gutierrez to have intended both the act and to cause some kind of injury or damage.

Before proceeding with the analysis, a review is in order.

*Review*

Kansas public policy prohibits insurance coverage for intentional acts: "[A]n individual should not be exempt from the financial consequences of his own intentional injury to another." *Shelter Mut. Ins. Co. v. Williams,* 248 Kan. 17, 28, 804 P.2d 1374 (1991); see *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 686, 512 P.2d 403 (1973). Consequently, the legislature has authorized motor vehicle liability insurers to exclude coverage "for any damages from an intentional act." See K.S.A. 40-3107(i)(6). Such exclusionary clauses should be narrowly construed against the insurer. See *Marquis v. State Farm Fire & Cas. Co.,* 265 Kan. 317, 327, 961 P.2d 1213 (1998).

"In a certain sense, all acts are intentional, save perhaps for involuntary muscle spasms." Dykes, *Occurrences, Accidents, and Expectations: A Primer of These (and Some Other) Insurance-Law Concepts*, 2003 Utah L. Rev. 831, 846-47 (2003). See *Falk v. Whitewater*, 65 Wis. 2d 83, 221 N.W.2d 915 (1974) (Almost all negligent conduct is composed of individual intentional components.). Accordingly, a distinction is drawn between intentional acts and the intent to cause injury. See *Pachucki v. Republic Insurance Co.*, 89 Wis. 2d 703, 278 N.W.2d 898 (1979) (An intentional act is a separate legal consideration and must be distinguished from the intent to cause injury.) (citing *Falk v. Whitewater*, 65 Wis. 2d 83, 221 N.W.2d 915 [1974]). Kansas recognizes, for example, that an intentional act may nevertheless result in unintended injury. See *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. at 687.

The parties agree upon Gutierrez' intentional acts, *e.g*, driving her car at an excessive speed. Accordingly, we are concerned with the second step of the Kansas intentional act exclusion analysis: whether, through her intentional acts, she intentionally caused the injuries. If so, coverage is excluded. Short of direct evidence of Gutierrez' intent to cause injury, *i.e.*, through her testimonial admission, her intent to cause injury may be inferred. In Kansas, intent to cause injury may be inferred if the injury is the natural and probable consequence of her intentional acts. Particularly because the facts are stipulated to, we may make this intentional injury determination as a matter of law. See *Roy v. Young*, 278 Kan. at 247 (where there is no factual dispute, appellate review of an order granting summary judgment is de novo); *Loveridge v. Chartier*, 161 Wis. 2d 150, 468 N.W.2d 146 (1991) (whether defendant intended to injure plaintiff is matter of law based upon undisputed facts).

In *Harris v. Richards*, 254 Kan. 549, 554, 867 P.2d 325 (1994), we stated that the natural and probable consequences approach had been developed in a series of cases, beginning with *Rankin v. Farmers Elevator Mutual Insurance Company*, 393 F.2d 718 (10th Cir. 1968). In *Rankin*, the driver of a pickup truck, after unsuccessfully trying to stop a motorcyclist traveling alongside, inten-

tionally turned his truck into the motorcyclist. The trucker argued that his insurance carrier's coverage for the motorcyclist's injuries was not excluded by a clause whose operative language was virtually identical to the instant case: excluding liability for "bodily injury or property damage caused intentionally by or at the direction of the insured." 393 F.2d 719. The Tenth Circuit Court of Appeals disagreed, stating:

"Here the driver of a truck, while traveling at a speed of fifty miles an hour alongside of a motorcycle going in the same direction at the same speed, deliberately and purposefully threw his truck against the motorcycle and its rider. *Persons are presumed to intend the natural and probable consequences of their acts. State v. Gordon,* 151 Kan. 932, 101 P.2d 888 [1940]." (Emphasis added.) 393 F.2d at 720.

The Tenth Circuit concluded:

"The serious injury of the rider of the motorcycle was a consequence of the deliberate collision and should have been expected and hence intended.

". . . *Where an intentional act results in injuries which are the natural and probable consequences of the act, the injuries, as well as the act, are intentional.* See *Wigginton v. Lumbermens Mutual Casualty Co.,* La. App., 169 So. 2d 170 [1964]." (Emphasis added.) 393 F.2d at 720.

Since the *Rankin* decision in 1968, Kansas appellate courts have faithfully applied its "natural and probable consequences" test to various "intentional act exclusions" and have usually excluded coverage. One frequently addressed clause has provided exclusion from liability for "bodily injury . . . which is *either expected or intended* from the standpoint of the insured." (Emphasis added.) Apparently, the first Kansas appellate decision to apply the *Rankin* test to this particular exclusion was *Casualty Reciprocal Exchange v. Thomas,* 7 Kan. App. 2d 718, 647 P.2d 1361, *rev. denied* 231 Kan. 799 (1982). There, a homeowner shot a partygoer in the face at close range with a pistol. After reviewing the arguments, the *Thomas* court held that "[t]he better rule is found in *Rankin,* where it was held that where an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional." It excluded the plaintiff's injury from coverage. 7 Kan. App. 2d at 721.

Similarly, the following year in *Bell v. Tilton,* 234 Kan. 461, 674 P.2d 468 (1983), this court excluded coverage under this same "expected or intended" clause because the injury to the plaintiff's eye was the "natural and probable consequence" of playing a game where a playmate repeatedly shot at him with a BB gun. Relying upon *Thomas,* which in turn relied upon *Rankin,* the court held at 234 Kan. 461, Syl. ¶ 2: "[W]here an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional." See *Spivey v. Safeco Ins. Co.,* 254 Kan. 237, 865 P.2d 182 (1993) (test applied to claims of assault, battery, and infliction of emotional distress and bodily harm; coverage excluded under same clause); *Harris v. Richards,* 254 Kan. 549, 867 P.2d 325 (1994) (test applied to shooting shotgun at occupied cab of pickup; coverage excluded under same clause); *Shelter Mut. Ins. Co. v. Williams,* 248 Kan. 17, 28, 804 P.2d 1374 (1991) (jury instructions not clearly erroneous in school shooting case that provided shooter "would be presumed to have intended the natural and probable consequences of his actions"); see also *First Financial Ins. Co. v. Bugg,* 265 Kan. 690, 704, 962 P.2d 515 (1998) (Kansas has "adopted the natural and probable consequences test."). In none of these cases did this court address whether there is a distinction between these two terms contained in the intentional act exclusion clause—"expected" or "intended."

Another "intentional act" exclusion clause has excluded liability for "any damages arising from an intentional act." In *State Farm Fire & Cas. Co. v. Falley,* 23 Kan. App. 2d 21, 926 P.2d 664 (1996), *rev. denied* 261 Kan. 1086 (1997), the court addressed this particular clause and held that the *Rankin* natural and probable consequences test should be applied to determine whether coverage was excluded, *i.e.,* because the plaintiff's injury was the "natural and probable consequence" of the insured's intentionally driving his car with the plaintiff spread-eagled on the hood.

Similarly, the Tenth Circuit Court of Appeals reviewed yet another "intentional act" exclusion clause in *Freightquote v. Hartford Cas. Ins.,* 397 F.3d 888 (10th Cir. 2005). That particular clause excluded coverage for " '[p]ersonal and advertising injury arising out of an offense committed by, at the direction of or with the

consent or acquiescence of the insured with *the expectation of inflicting personal and advertising injury*' (the intentional act exclusion clause)." (Emphasis added.) 397 F.3d at 891. Citing *Spivey* and *Harris*—" '[w]here an intentional act results in injuries which are a natural and probable result of the act, the injuries are intentional' "—the court applied *Rankin's* test to a claim of tortious interference with contractual relations and excluded coverage. 397 F.3d at 893-94.

The *Rankin* test represents a minority approach. As the Court of Appeals majority in the instant case suggests, citing Jerry, Understanding Insurance Law § 63C (3d ed. 2002), three different views regarding intent have developed. Under one minority view ("minority view—negligence"), the classic tort doctrine of looking to the natural and probable consequences of the insured's act determines intent. As Jerry explains, if the intentional act by the insured results in injuries or damage that are a natural and probable result of the act, the loss is intentional for purposes of the exclusion and no coverage exists. This approach, the Kansas approach, yields the narrowest coverage and the most pro-insurer results. See Understanding Insurance Law, § 63C, p. 483; 36 Kan. App. 2d at 417.

Under the majority view, the insured must have intended both the act *and* to cause some kind of injury or damage. Intent can be actual, or intent to cause the injury or damage can be inferred from the nature of the act and the foreseeability that harm would result. It is not essential, however, that the harm be of the same character and magnitude as that intended. See Understanding Insurance Law, § 63C, p. 483; 36 Kan. App. 2d at 417.

A third, minority approach ("minority view—intent") provides the broadest coverage and the fewest pro-insurer results and represents the opposite end of the continuum from the Kansas approach. Under this view, for the exclusion to apply the insured must have had the specific intent not only to injure but also to cause the particular type of injury suffered. See Jerry, § 63C, p. 483; 36 Kan. App. 2d at 417. Kansas has expressly rejected the "specific intent" approach. See *Harris v. Richards*, 254 Kan. at 555.

*Critique of the Rankin test*

Kansas' minority approach started with *Rankin,* which was based upon a 1940 Kansas criminal case, *State v. Gordon,* 151 Kan. 932,

101 P.2d 888 (1940), and a 1964 Louisiana case, *Wigginton v. Lumbermens Mut. Cas. Co.,* 169 So. 2d 170 (La. 1964). *Gordon,* a manslaughter case, is of marginal support. It simply addressed the difference between "design" and "intent" in a criminal context, holding that design carries with it an idea of a plan, a scheme, or deliberate purpose, while intent does not necessarily do so. Accordingly, the court held: "While persons of sound mind are ordinarily presumed to intend the natural and probable consequences of their acts, it does not follow that design to effect the result is thereby presumed to exist." 151 Kan. at 932.

In *Wigginton,* an angry Louisiana driver revved his car engine and backed into a taxicab parked behind him, injuring the cab driver's hand. Although as a civil case it may be more relevant than the *Gordon* criminal case, *Wigginton* is also marginally supportive because the court made no mention of "natural and probable consequences." It merely held that "[u]nder the facts disclosed by evidence in this case there is no question but that the injury was caused intentionally by the insured Millard. He knew the car was back of him and he chose to deliberately back into it." *Gordon,* 169 So. 2d at 171. Accordingly, the court held that the following policy exclusion barred coverage: " '[T]o bodily injury or property damage caused intentionally by or at the direction of the insured.' " *Gordon,* 169 So. 2d at 171.

In *Rankin* itself, the truck driver's conduct was clearly intentional, and the chances of it causing injury were virtually certain: swerving a truck into a motorcycle while both vehicles are moving at 50 m.p.h. The lowest of the three standards discussed by Jerry to be met by an insurance company to exclude coverage for an intentional injury—"natural and probable consequences" of the act—was therefore easily met. When measured against this lowest standard, the same can be said for the shootings in *Williams*— where a rifle and pistol-wielding student shot and killed a principal and wounded several others in school—and probably said for the shootings in *Thomas, Bell* and *Harris.* Indeed, the Minnesota Supreme Court has found that similar shootings have met that court's higher "intentional injury" standard: "when the nature and circumstances of the insured's act [are] such that harm [is] substantially

certain to result." See *Woida v. North Star Mut. Ins. Co.,* 306 N.W.2d 570 (Minn. 1981) (court inferred intent to cause injury where the insured made a plan with others to fire shots at a truck he knew to be occupied and fired several shots at the truck with a rifle).

In short, aside from the possible exception of *Spivey,* this court has rarely, if ever, been faced with "less severe" facts than the shootings in *Thomas, Bell, Harris,* and *Williams.* Accordingly, this court has not really needed to consider alternative approaches to *Rankin's* natural and probable consequences test for determining whether an injury was intentionally caused.

In our view, the present facts clearly are less severe than the actions of truck driver Rankin and the 14-year-old shooter in *Williams* who shot at least three people in his school hallway. They are arguably less severe than the shootings in *Thomas, Bell,* and *Harris.* As a result, we have been presented with an opportunity to consider the continued efficacy of the *Rankin* natural and probable consequences test.

We begin by observing that in another context, this court has defined "natural and probable consequences" as follows:

"Natural and probable consequences are those *which human foresight can anticipate* because they happen so frequently they may be expected to recur, while possible consequences are those which happen so infrequently that they are not expected to happen again." (Emphasis added.) *Rowell v. City of Wichita,* 162 Kan. 294, 302, 176 P.2d 590 (1947).

We next observe that the possibility of confusion exists because "natural and probable consequences" is a phrase used to describe not only our test for determining whether an injury is intentional, but also, as in *Rowell,* to determine proximate cause in the simple negligence context:

"A rule often stated is that the test of proximate cause is that which determines an injury to be *the proximate result of negligence only where the injury is the natural and probable consequence of the wrongful act,* an additional condition sometimes stated being that it must appear the injury was *anticipated* or that it reasonably *should have been foreseen* by the person sought to be charged with liability. [Citations omitted.]" (Emphasis added.) *Rowell,* 162 Kan. at 302.

A closely related problem with the natural and probable consequences approach for determining whether an injury was intentionally caused is its confusion with the concept of foreseeability: "[n]atural and probable consequences are those which human foresight can anticipate" or "should have been foreseen." 162 Kan. at 302. If foreseeability of injury alone were enough to activate the policy exclusion, then many acts of mere negligence would be excluded. We should hesitate to read "intentional act exclusion" clauses to exclude both intentional and negligent acts, or else virtually all insurance coverage would be excluded. *Cf. Continental Western Ins. Co. v. Toal,* 309 Minn. 169, 176, 244 N.W.2d 121 (1976) (Defining exclusionary clause's "expected injury" as a foreseeable injury would have the effect of unduly limiting coverage under a liability insurance policy since foreseeability is generally an essential element in establishing liability. Foreseeability could include an injury resulting from simple negligence. Therefore, " 'an expected injury' as that term is used in an insurance exclusionary clause cannot be equated with foreseeable injury."); *cf. Poston v. U.S. Fidelity & Guarantee Co.,* 107 Wis. 2d 215, 222, 320 N.W.2d 9 (1981) (same) (If foreseeability of injury alone were enough to activate the policy exclusion, then many acts of mere negligence would be excluded. To so broaden the exclusion to exclude foreseeable injuries is unjustified.).

As one commentator has elaborated upon the problems:

"In a certain sense, all acts are intentional, save perhaps for involuntary muscle spasms. Thus, if taken literally, a proscription against coverage for *the natural and probable consequences of the insured's acts* would eliminate almost all insurance coverage, because an 'act' (inadvertently leaving a candle burning at a neighbor's home while house-sitting) can be negligent, and the 'natural and probable consequences' (the resulting house fire) are just what insurance is supposed to protect against. An older string of disconcerting Tenth Circuit cases shows how far afield a literal application of the 'natural and probable consequences' test can take us from the purpose of the insurance bargain." (Emphasis added.) Dykes, *Occurrences, Accidents, and Expectations: A Primer of These (and Some Other) Insurance-Law Concepts,* 2003 Utah L. Rev. 831, 846-47 (2003).

In one decision from the "older string of disconcerting Tenth Circuit cases," that court candidly discusses the confusion caused by its past approach to identifying accidents which was "based upon

the underlying maxim that everyone is constructively held to intend *the natural and probable consequences of his acts*; and, that which is intended or anticipated cannot be accidental." *Hutchinson Water Co. v. United States Fidelity & G. Co.,* 250 F.2d 892, 894 (10th Cir. 1957). Under this rationale, if the damage was the natural and probable consequence of the negligent act, then the damage was foreseeable, and therefore not accidental. On the other hand, if the damage was the unexpected, hence *un*foreseen result of the negligent act, it may have been an accident, but there was no liability under the policy for the negligence. The court conceded the problem its approach created: "In either instance, the insurer would be free of coverage and the policy would be rendered meaningless." 250 F.2d at 894.

*Modifying Rankin*

The time has come to begin moving away from the problems caused by the *Rankin* test's consideration of all injuries which are the "natural and probable" result of any intentional act as being "intentional" and therefore barred by "intentional act" or "intentional injury" exclusions.

With this mission in mind, we observe that this court has previously used language which places a higher burden on the insurance company attempting to meet the intentional act exclusion. In *Bell v. Tilton,* our first decision which appeared to adopt the *Rankin* natural and probable consequences test (see 234 Kan. 461, Syl. ¶ 2), the body of the opinion actually stated as follows:

"[I]t was not necessary for the garnishee insurance company to show [the shooter] specifically intended to strike [the victim] in the eye with a BB pellet in order to deny liability. Rather, if from the acts, circumstances and inferences of the case, it appeared [the shooter] had [1] *the desire to cause the consequences of his acts* or [2] *he believed the consequences were substantially certain to result,* his conduct was intentional and the policy exclusion was operative." (Emphasis added.) 234 Kan. at 472.

Although *Bell* cited no reference for this holding, the language is virtually identical to that contained in § 8A of the Restatement (Second) of Torts (1964) to define "intent":

"The word 'intent' is used throughout the Restatement of this subject to denote that the actor [1] desires to cause the consequences of his act, or that [2] he believes that the consequences are substantially certain to result in it."

## Comment a to § 8A provides:

" 'Intent,' as it is used throughout the Restatement of Torts, has reference to the consequences of an act rather than the act itself. When an actor fires the gun in the midst of the Mojave Desert, he intends to pull the trigger; but when the bullet hits a person who is present in the desert without the actor's knowledge, he does not intend that result. 'Intent' is limited, where it is used, to the consequences of the act."

## Comment b provides further:

"All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. *If the actor knows that the consequences are certain, or substantially certain, to result from his act,* and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

"As the probability that the consequences will follow decreases, and becomes *less than substantial certainty*, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282. All three have their important place in the law of torts, but the liability attached to them will differ." (Emphasis added.)

Other courts have adopted approaches consistent with § 8A of the Restatement (Second) of Torts. When considering intentional act exclusions of a liability policy in Minnesota,

"the intent to injure may be established: (1) by proof of an actual intent to injure or (2) by inferring intent *as a matter of law*. . . . The general rule is that intent is inferred as a matter of law 'when the nature and circumstances of the insured's act [are] such that harm [is] *substantially certain to result*.' " (Emphasis added.) *B.M.B. v. State Farm Fire and Cas. Co.*, 664 N.W.2d 817, 821-22 (Minn. 2003).

The Minnesota court has correctly acknowledged that its "substantial certainty" is a higher standard than "natural and probable consequence." As it stated in *American Family Ins. Co. v. Walser*, 628 N.W.2d 605, 613 (Minn. 2001): "The mere fact that the harm was a 'natural and probable consequence' of the insured's action is not enough to infer intent to injure." See also *Lewis v. Allstate Ins. Co.*, 730 So. 2d 65, 68 (Miss. 1998) (When addressing whether an intentional acts exclusion precludes coverage, "[i]n Mississippi,

'[an] act is intentional if the actor desires to cause the consequences of his act, or believes that the consequences are substantially certain to result from it.' "); *Erie Ins. Exchange v. Muff,* 851 A.2d 919, 927-28 (Pa. Super. 2004) (For purposes of an exclusionary clause's " 'expected or intended' provision, 'an insured intends an injury if he desired to cause the consequences of his act or if he acted knowing that such consequences were substantially certain to result.' "); *Wiley v. State Farm Fire & Cas. Co.,* 995 F.2d 457, 460 (3d Cir. 1993) (same).

Similarly, in *Loveridge v. Chartier,* 161 Wis. 2d 150, 168-69, 468 N.W.2d 146 (1991), the Wisconsin Supreme Court used language reminiscent of this court's language in *Bell* when it stated:

"In Wisconsin, an intentional-acts exclusion precludes insurance coverage only where the insured acts intentionally and intends some harm or injury to follow from the act. [Citations omitted.] *An insured intends to injure or harm another if he 'intend[s] the consequences of his act, or believe[s] that they are substantially certain to follow.'* Pachucki [*v. Republic Ins. Co.,*] 89 Wis. 2d [703] at 710, 278 N.W.2d 898 [1979] (citing Restatement (Second) of Torts, sec. 8A at 15 [1965]). In other words, intent may be actual (a subjective standard) or inferred by the nature of the insured's intentional act (an objective standard). *Pachucki,* 89 Wis. 2d at 709. Therefore, an intentional-acts exclusion precludes insurance coverage *where an intentional act is substantially certain to produce injury* even if the insured asserts, honestly or dishonestly, that the did not intend any harm. [Citation omitted.] As Professor Prosser commented:

'Intent, however, is broader than a desire to bring about physical results. *It must extend not only to those consequences which are desired, but also to those which the actor believes are substantially certain to follow from what he does.* . . . The man who fires a bullet into a dense crowd may fervently pray that he will hit no one, but since he must believe and know that he cannot avoid doing so, he intends it. *The practical application of this principle has meant that where a reasonable man in the defendant's position would believe that a particular result was substantially certain to follow, he will be dealt with by the jury, or even by the court, as though he had intended it.'* [Citation omitted.]" (Emphasis added.)

The *Loveridge* court continued with a reference to its *Pachucki* decision, also reminiscent of our *Bell* decision:

"Furthermore, the exclusion precludes coverage even if the harm that occurs is different in character or magnitude from that intended by the insured. [Citations omitted.] For example, in *Pachucki,* we held that an intentional-acts exclusion precluded insurance coverage for severe eye injuries even though the insured subjectively intended only to sting the plaintiff by firing a greening pin [similar to

shooting paper clips with rubber bands] at his body. *Pachucki*, 89 Wis. 2d at 712." 161 Wis. 2d at 169.

In *Bell,* plaintiff argued that because the shooter testified he did not have the specific intent to injure plaintiff's eye when he fired the BB gun at plaintiff's face, then the injury was not intentional. In rejecting this argument, this court stated: "[T]he act of shooting another in the face with a BB pellet is one which is recognized as an act so certain to cause a particular kind of harm it can be said an actor who performed the act intended the resulting harm, and his statement to the contrary does nothing to refute that rule of law." 234 Kan. at 471.

Finally, the *Loveridge* court fully acknowledged the lack of scientific precision with this approach:

"There is no bright-line rule to determine when intent to injure should be inferred as a matter of law. Rather, each set of facts: 'must be considered on a case-by-case basis; the more likely *harm* is to result from certain intentional conduct, the more likely *intent to harm* may be inferred as a matter of law.' [Citation omitted.]" (Emphasis added.) 161 Wis. 2d at 169-70.

Based upon these authorities, we conclude that the "intentional act" or "intentional injury" exclusion test in Kansas should be as follows:

The insured must have intended both the act and to cause some kind of injury or damage. Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act.

It is not essential, however, that the harm be of the same character and magnitude as that intended. See Understanding Insurance Law, § 63C p. 483; *Loveridge v. Chartier,* 161 Wis. 2d 150 (exclusion precludes coverage even if the harm that occurs is different in character or magnitude from that intended by the insured); *Bell v. Tilton,* 234 Kan. 461 (shooter argued that because he testified he did not have the specific intent to injure plaintiff's eye when he fired the BB gun at plaintiff's face, then injury was not as a matter of law "intentional"; court held it was not necessary for insurance company to show the shooter specifically intended to strike the victim in the eye with a BB pellet, if from facts it

appeared shooter believed consequences were substantially certain to result).

This revised test for intentional injury places Kansas more in line with the majority view. See 31 ALR 4th 957, § 5[a],[b],[c]; Understanding Insurance Law, § 63C p. 483 and nn.305 and 306 ("Under the majority view . . . the insured must have intended both the act *and* to cause some kind of injury or damage. Intent can be actual, or intent to cause the injury or damage can be inferred from the nature of the act and the foreseeability that harm would result. It is not essential, however, that the harm be of the same character and magnitude as that intended.").

This revised test for intentional injury also helps reduce some of the confusion associated with using "natural and probable consequences" in other contexts, *e.g.*, determining proximate cause in simple negligence. It further helps to put "intentional" injury in its rightful place on the scale for measuring severity of conduct. See Comment b to Restatement (Second) of Torts § 8A ("If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result. As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness, as defined in § 500. As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence, as defined in § 282."); *cf. Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 167 L. Ed. 2d 1045, 127 S. Ct 2201 (2007) (recklessness, a lesser standard of conduct than intentional, requires running a risk substantially greater than the risk making the conduct merely negligent or careless, citing, *inter alia*, Restatement [Second] of Torts § 500, p. 587 [1963-1964]).

Having revised the test, we now apply it to the specific facts of this case. The Court of Appeals noted that Gutierrez was driving 100 m.p.h. " 'down Shawnee Drive all the way down to Maplehill Cemetery' " where the wreck occurred. Reyes indicated that when Gutierrez left Interstate 635 to eventually enter Shawnee Drive, she pulled into the lane of oncoming traffic—apparently driving

against the traffic entering the interstate on an approach ramp—and then failed to stop at the end of the ramp before entering Shawnee Drive. She then drove down this street, which was a two-lane road, until the wreck occurred at the cemetery. Reyes indicated that the wreck occurred when Gutierrez, who was traveling 100 m.p.h., bottomed out at an intersection marked by a stop sign. It also noted that Reyes testified that he had warned Gutierrez of this very scenario:

"[Q:] She was going 100 miles an hour through that intersection?

"[A:] Yeah. We was flooring it all the way down until I told her—my last words to everybody in the car was we're going to bottom out once we hit the stop sign.

"[Q:] At what intersection?

"[A:] . . . 38th and Shawnee Drive.

"[Q:] 38th and Shawnee Drive? Okay.

"[A:] And I thought we were going to bottom out and the next thing I know we bottomed out the car, slides—bottoms out and comes my way and really starts going backwards. And we hit the ditch and popped up . . . ." 36 Kan. App. 2d at 421.

Accordingly, even under this higher standard for Benchmark to meet, we conclude it has nevertheless met its burden demonstrating application of the intentional act exclusion. Simply put, injury was substantially certain to result under these circumstances: driving the wrong way against traffic, failing to stop at a stop sign, and driving at 100 m.p.h. through neighborhoods. And as Benchmark points out, Reyes correctly predicted, and warned Gutierrez against, the precise consequence of her act—bottoming out at the approaching intersection—shortly before it happened. *Cf. Continental Western Ins. Co. v. Toal,* 244 N.W.2d 121, 122-23 (Minn. 1976) (intent to cause bodily injury could be inferred where insureds had planned armed robbery at a bowling alley and knew that their weapons were loaded and that someone might be harmed or killed, even though they did not specifically intend to shoot anyone during the robbery).

Issue 2: *Whether the illegal act exclusion bars coverage is moot.*

Benchmark argues that the Court of Appeals erred in concluding that the "illegal act" exclusion was not applicable. Given our ruling

that the intentional act exclusion bars coverage, our consideration of this issue is unnecessary. The issue is moot.

The judgment of the Court of Appeals is affirmed. The judgment of the district court is reversed.

JOHNSON, J., not participating.
LOCKETT, J., Retired, assigned.

DAVIS, J., dissenting: The majority opinion announces the following principle that will be applied in the context of the "intentional act" or "intentional injury" exclusion test for insurance policies:

"The insured must have intended both the act and to cause some kind of injury or damage. Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are substantially certain to result from the act." 285 Kan. at 933.

I agree with the majority that this standard, as stated, is a just formulation of intent as it came to be understood in Kansas, as well as the majority of other states, and in the Restatement (Second) of Torts. However, I cannot agree with the majority's modification of this standard by the sentence that immediately follows the newly adopted standard in its opinion: "It is not essential . . . that the harm be of the same character and magnitude as that intended." 285 Kan. at 933. This broad statement has no basis in Kansas law and is unsupported by decisions in other jurisdictions. Nevertheless, it is upon this statement—which is the effective standard adopted by the majority opinion—that the majority bases its conclusion that the intentional act exclusionary clause in this case bars coverage for the claimed injuries in this case.

Up to the time of this decision, Kansas law interpreted exclusionary clauses of insurance policies to exclude only intentional acts resulting in intentional injury. If the act itself was intentional, *e.g.,* shooting a BB gun at another child or shooting a gun at one person

yet hitting another, and the resultant injury was the natural and probable consequence of such action, *e.g.*, being shot by a BB gun or wounded by a bullet, it was determined that because the character and magnitude of the harm was the same that could be expected from the intentional act, the consequences of that act were not covered by the policy.

The majority opinion has now concluded that the harm caused or injury caused need not be of the same character and magnitude as that intended and that intent to cause the injury or damage can be *inferred* from the nature of the act when any injury is substantially certain to follow.

In this case, we have no actual evidence of an intent to injure on the part of the insured. In fact, the evidence demonstrates that the insured was attempting to elude the police, albeit in a reckless manner. Nevertheless, the majority opinion concludes that the recklessness of driving the automobile was "intentional" and, although there is no evidence of the insured's intent to injure her passengers, the intent to injure may be inferred because of the insured's reckless driving in a situation where some injury was almost certain to occur. I respectfully dissent because this new principle adopted by the majority, as modified by the statement that the character and magnitude of the injury intended do not matter to the determination of intent, does not fit comfortably into Kansas law, does not represent the majority view in the United States, and is inconsistent with the principles set forth in the Restatement (Second) of Torts (and cited by the majority opinion) relating to intent. Moreover, the rule that is effectively adopted stands on its head one of the basic, long-accepted maxims of law in this state that exclusionary clauses in insurance policies must be narrowly construed against the insurer.

By adopting a standard where the character and magnitude of an injury are irrelevant to a court's determination of intent, the majority opinion in this case forecloses the long-recognized principle in Kansas law that intentional act exclusionary clauses provide coverage for acts that may be deemed intentional in a theoretical context yet lead to *unintended* results. The result of this foreclosure is particularly evident in this case, where the majority finds that

reckless acts that result in unintended injuries nevertheless bar coverage under the insurance policy's intentional act exclusionary clause.

In *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973), this court considered a similar policy provision to that involved in the case before us. There, an employee of the defendant ran over the plaintiff's foot while taking the plaintiff's vehicle after the plaintiff failed to pay for mechanic services. The defendant's insurance company denied coverage, arguing that the act of taking the plaintiff's vehicle was "wrongful and intentional." 212 Kan. at 687. Essentially, the insurance company contended that the court should adopt the standard articulated by the majority in this case—that because the act of taking the vehicle was an intentional act that could result in damage to the property and because the plaintiff was present at the time protesting the taking, the employee's actions should not be covered by the insurance policy. See *Benchmark*, 285 Kan. at 935 ("Simply put, injury was substantially certain to result under these circumstances: driving the wrong way against traffic, failing to stop at a stop sign, and driving at 100 m.p.h. through neighborhoods.").

The *Spruill* court rejected the insurance company's argument, recognizing that "the act of taking possession of the truck, although intentional, was not the act which caused Rounkles' [the plaintiff's] personal injury." 212 Kan. at 687. Instead, the court noted that the injury was caused "by the manner in which the employees were moving the truck." 212 Kan. at 687. For this reason, the court held that the insurance policy covered the plaintiff's injuries, explaining:

"Under this policy, coverage is avoided only when an act results in an intentional injury. *An intentional act may result in an unintended injury.* As we pointed out in *Gowing* [*v. Great Plains Mutual Ins. Co.*, 207 Kan. 78,] 82, [483 P.2d 1072 (1971),]'. . . *the distinction between an intentional injury and an unintended injury resulting from an intentional act has been recognized by various authorities.*' Since the undisputed facts disclose the personal injury to Rounkles was not the intended result of Spruill's acts, the policy of insurance covered Spruill for Rounkles' personal injury." (Emphasis added.) 212 Kan. at 687.

It is true that, in a general sense, " 'all acts are intentional, save perhaps for involuntary muscle spasms.' " *Benchmark*, 285 Kan. at

923 (quoting Dykes, *Occurrences, Accidents, and Expectations: A Primer of These [and Some Other] Insurance-Law Concepts*, 2003 Utah L. Rev. 831, 846-47 [2003]). However, as the *Spruill* court noted, Kansas courts have traditionally found that acts are not intentional in a legal sense when the resultant injury was *unintended*. See 212 Kan. at 687. By making the blanket statement that "[i]t is not essential [for an act to be deemed intentional] . . . that the harm be of the same character and magnitude as that intended," the majority opinion effectively does away with this longstanding principle of Kansas law. 285 Kan. at 933.

In *Baska v. Scherzer*, 283 Kan. 750, 756-63, 156 P.3d 617 (2007), we again recognized that an action is not considered intentional under Kansas law when it results in an unintended injury. *Baska* arose when the plaintiff stepped between two young men in a fist-fight and was struck as a result. The plaintiff brought a negligence action against both fighters, claiming that while the men did intend to hit one another, her injuries were unintended. We rejected the plaintiff's claim that the action arose in negligence, finding instead that the plaintiff had stated a claim for assault and battery (intentional torts) based on the doctrine transferred intent. The court in *Baska* explained:

"The defendants' acts of throwing punches in this case were *intentional* actions. Each defendant intended to strike at the other in order to cause harm. The defendants intended to punch, and they did punch. The fact that the punches in question hit the plaintiff rather than the defendants is immaterial to the analysis." 283 Kan. at 764.

While *Baska* found that the conduct in that case was truly an assault and battery under the doctrine of transferred intent, and thus that the plaintiff's action was barred by the 1-year statute of limitations in K.S.A. 60-514(b), we recognized in that case that a different result would have been reached if the resultant injury was *unintended*. In particular, *Baska* cited as examples two cases where Kansas courts determined that the conduct in question did not sound in intentional torts, but rather was rooted in negligence due to the fact that the plaintiff's *injury* was unintended: *Hackenberger v. Travelers Mutual Cas. Co.*, 144 Kan. 607, 62 P.2d 545 (1936),

and *Vetter v. Morgan*, 22 Kan. App. 2d 1, 913 P.2d 1200, *rev. denied* 257 Kan. 1096 (1995); see *Baska*, 283 Kan. at 759-63.

In *Hackenberger*, this court rejected an insurance company's claim that an intentional act that resulted in unintended injury was barred by the 1-year statute of limitations for intentional torts. In that case, the plaintiff was a passenger in the back of a truck and was sitting with his legs hanging over the side. A cattle truck coming the other direction was passing another car as it was speeding around a curve; the cattle truck crowded the plaintiff's truck off of the highway and came into contact with the plaintiff's legs, causing him injury. The plaintiff filed suit in negligence. The defendant—the cattle truck driver's insurance company—claimed that the petition actually stated an action for battery and thus was barred by the 1-year statute of limitations. This court clarified that had the driver of the truck *intended* to hit the truck on which the plaintiff was riding, the action should be dismissed. 144 Kan. at 609-10. Quoting from the Restatement of Torts § 13, the *Hackenberger* court explained:

" 'It is not enough that the act itself is intentionally done and this, even though the actor realizes or should realize that it contains a very grave risk of bringing about the contact or apprehension. Such realization may make the actor's conduct negligent or even reckless, *but unless he realizes that to a substantial certainty the contact or apprehension will result, the actor has not that intention which is necessary to make him liable under the rule stated in this Section.*' [Citation omitted.]" (Emphasis added.) 144 Kan. at 610-11.

Because " '[t]he petition [was] not susceptible of an interpretation that [the driver of the cattle truck] intentionally inflicted the injury,' the [*Hackenberger*] court held that the 2-year limitations period for negligence should be applied. 144 Kan. at 611." *Baska*, 283 Kan. at 759.

In *Vetter*, the Kansas Court of Appeals came to a similar conclusion. There, the plaintiff's van ran off the road after the defendant, a passenger in another vehicle, made verbal threats to the plaintiff and the car in which the defendant was riding veered at the plaintiff's van. The defendant claimed that he "did not intend to scare, upset, or harm Vetter," but instead was attempting to amuse the other passengers in the car with him. 22 Kan. App. 2d

at 2. The plaintiff brought a number of claims against the defendant, including a claim for negligence. The trial court dismissed the negligence claim as a matter of law, finding that the defendant's actions were intentional.

The Court of Appeals held that the trial court erred in dismissing the plaintiff's negligence claim. It explained:

"[A] negligence claim may be based on actions the defendant intends to affect, or should realize are likely to affect, the conduct of another in a manner that creates an unreasonable risk of harm to another. . . .

". . . Although Morgan [the defendant] said his only intent was to amuse his friends, and he denied that he intended to frighten or harm Vetter, she testified that she was 'very, very frightened.' The record supports a reasonable inference that Morgan should have realized Vetter would be frightened and that it was foreseeable that her fright would create a risk of harm." 22 Kan. App. 2d at 5-6.

Under the standard that the majority adopts in this case, the outcomes of both *Hackenberger* and *Vetter* would have been different. In *Hackenberger*, the act of passing a vehicle at excessive speed, under the majority's reasoning, could be substantially certain to cause some kind of damage to either the driver's vehicle or the other vehicle; thus, the reasoning adopted by the majority may lead to the conclusion that intent can be inferred based upon the driver's actions of passing a vehicle at excessive speeds around a curve. Likewise, in *Vetter*, the logical application of the majority's standard in this case would indicate that Vetter intended to cause Morgan to drive into a pole, since he intended to scare her (*i.e.*, cause her *some* injury). Clearly this is not the reasoning adopted by the Kansas courts in those cases.

Furthermore, the reasoning of the *Hackenberger* and *Vetter* decisions is not inconsistent with the Kansas cases cited by the majority opinion. Notably, all of the Kansas decisions discussed by the majority deal with factual scenarios where the actor fired a gun and caused injury when a person was shot by the projectile fired, though that injury was either to a different person or was more serious than the shooter desired. See *Harris v. Richards*, 254 Kan. 549, 867 P.2d 325 (1994) (an insurance clause excluded coverage when the defendant shot and killed the driver of a truck when the shooter had desired to shoot the passenger, not the driver); *Shelter*

*Mut. Ins. Co. v. Williams*, 248 Kan. 17, 804 P.2d 1374 (1991) (the exclusionary clause of an insurance policy applied when the insured's son intentionally opened fire on school grounds, even though he did not understand his actions were wrongful); *Bell v. Tilton*, 234 Kan. 461, 674 P.2d 468 (1983) (an insurance policy barred coverage when a playmate fired a BB gun at a friend and ended up shooting him in the eye); *Casualty Reciprocal Exchange v. Thomas*, 7 Kan. App. 2d 718, 647 P.2d 1361, *rev. denied* 231 Kan. 799 (1982) (a homeowner's action in shooting a person at close range with a pistol was intentional and thus that the action was not covered by the homeowner's insurance policy). None of these cases indicate that the character or magnitude of the act is immaterial to a determination of whether the act was intentional. Instead, the character and magnitude of the intended actions are inexorably tied to the court's determination in each case that the action was intentional—the shooters in each case intended to shoot at a person and carried out that intended action, and the resultant injuries were of the *same* character and magnitude that could be expected to occur from such actions.

Similarly, in *Rankin v. Farmers Elevator Mutual Insurance Company*, 393 F.2d 718 (10th Cir. 1968), where the driver of a pickup truck intentionally swerved his truck at a motorcyclist, forcing the motorcyclist to drive off the road, causing injuries, the character of the injuries intended (causing the motorcyclist to swerve off of the road) were rationally related to the character of the injuries received. As the *Rankin* court found, the injuries were "the natural and probable consequences of the act." 393 F.2d at 720. In other words, the driver of the pickup truck, in swerving at the motorcycle, knew that the particular injury he caused was likely to result from his actions.

Even the out-of-state cases cited by the majority fail to support the overly broad standard adopted in this case. Most notably, the majority cites *Loveridge v. Chartier*, 161 Wis. 2d 150, 468 N.W.2d 146 (1991), as an example of where the Wisconsin Supreme Court adopted a similar rule to that created by the majority in this case. The *Loveridge* court did find that "the exclusion precludes coverage even if the harm that occurs is different in character or mag-

nitude from that intended by the insured. [Citations omitted.]" 161 Wis. 2d at 169. However, the example cited by the *Loveridge* court as an application of this statement—barring coverage for plaintiff's severe eye injuries that resulted when the defendant shot a pin at him with a slingshot—belies the majority's broad application of that statement here. Rather, as the majority notes, the *Loveridge* decision is similar to this court's decision in *Bell*, where we found that "the act of shooting another in the face . . . is one which is recognized as an act so certain to cause *a particular kind of harm* it can be said an actor who performed the act intended the resulting harm." (Emphasis added.) *Bell*, 234 Kan. at 471.

Likewise, the Wisconsin Supreme Court's decision in *Pachucki v. Republic Insurance Co.*, 89 Wis. 2d 703, 711, 278 N.W.2d 898 (1979), which was cited by the *Loveridge* court as the source of its rule and by the majority here, does not support the majority's broad reading of intent in this case. The holding in *Pachucki* relied upon a case where a man intended to hit another man in the stomach with a pipe but ended up hitting him in the head. 89 Wis. 2d at 713-14 (citing *Butler v. Behaeghe*, 37 Colo. App. 282, 548 P.2d 934 [1976]). However, the *Butler* court noted that its reasoning was based on its conclusion that "since Behaeghe was found to have intentionally struck the plaintiff, he must be deemed to have intended the *ordinary* consequences of his voluntary actions." (Emphasis added.) 37 Colo. App. at 287-88.

It does not follow from these cases that either the Wisconsin or the Colorado courts would support the broad reading of intent adopted by the majority here—that if a person intends *some* damage or injury, then he or she is deemed to intend for exclusionary clause purposes *any other* damage or injury. Rather, these cases appear to recognize the effect of the principle articulated in the comments of Restatement (Second) of Torts § 8A (1964), which we cited in *Baska* and which was cited by the majority here:

"All consequences which the actor desires to bring about are intended, as the word is used in this Restatement. Intent is not, however, limited to consequences which are desired. If the actor knows that the consequences are certain, or substantially certain, to result from his act, and still goes ahead, he is treated by the law as if he had in fact desired to produce the result.

"As the probability that the consequences will follow decreases, and becomes less than substantial certainty, the actor's conduct loses the character of intent, and becomes mere recklessness . . . . As the probability decreases further, and amounts only to a risk that the result will follow, it becomes ordinary negligence . . . ." Restatement (Second) of Torts § 8A, comment b.

See *Baska,* 283 Kan. at 757; *Benchmark,* 285 Kan. at 931.

This passage from the Restatement recognizes that the character and magnitude of a particular consequence *do* matter in the determination of whether an action is intentional. If a particular result is not substantially certain to arise from the actor's behavior, then he or she cannot be said to have intended that result (even if he or she could be deemed to have intended some other consequence). This nuance has heretofore been reflected in Kansas case law as a determination of whether an intentional action leads to unintended results. See *Hackenberger,* 144 Kan. at 609-10. Because the majority opinion does away with this longstanding rule and provides that intent to cause *some* injury is sufficient to infer intent to cause *any* injury, see 285 Kan. at 933, I must dissent from this holding.

The underlying facts in this case illustrate the problems with the majority's formulation of intent. It is clear that Gutierrez *intended* to flee from the police in this case. However, as in *Spruill* where the employee wrongfully took the plaintiff's truck, "the act of taking possession of the truck [or of driving away from the police], although intentional, was not the act which caused . . . injury." 212 Kan. at 687. Instead, the injury was caused "by the manner in which" the action was taken. 212 Kan. at 687. As in *Spruill,* the manner in which Gutierrez drove her vehicle during the ensuing chase can only be described as reckless. See *Hackenberger,* 144 Kan. at 610-11.

However, the majority opinion finds that the injuries in this case that occurred when Gutierrez' car flipped several times and Sanchez was thrown from the car were intentional. The court explains that "injury was substantially certain to result under these circumstances: driving the wrong way against traffic, failing to stop at a stop sign, and driving at 100 m.p.h. through neighborhoods." 285 Kan. at 935. Essentially, the majority opinion concludes that be-

cause it was substantially certain that Gutierrez' excessive speeding would result in *some* injury to *some* thing—namely, bottoming out the vehicle when it ran a stop sign at the bottom of a hill—the court may also infer that Gutierrez intentionally caused the injury and death of the passengers in her vehicle.

This extension of intent runs contrary to Kansas law. As this court explained in *Hackenberger*, where the defendant's truck passed a vehicle while speeding, causing the vehicle to run off the road and causing the plaintiff, who was riding on the bed, to break his leg:

"Defendant further contends the allegation that assured was traveling at an excessive and unlawful rate of speed is in its nature a criminal charge and implies an element of intent to injure. No intent to injure is expressly alleged nor is the language open to such implication. Speed was simply alleged as one of the elements of negligence in connection with the time, place and traffic on the highway. The mere fact unreasonable speed under circumstances is prohibited and made an offense does not necessarily mean that injury resulting from such speed was intentional. Speed may be an element of negligence without disclosing an intention to injure." 144 Kan. at 611.

The Restatement (Second) of Torts provides a similar hypothetical as an example of behavior that does not rise to the level of intentional conduct under § 8A:

"On a curve in a narrow highway A, without any desire to injure B, or belief that he is substantially certain to do so, recklessly drives his automobile in an attempt to pass B's car. As a result of this recklessness, A crashes into B's car, injuring B. A is subject to liability to B for his reckless conduct, but is not liable to B for any intentional tort." Restatement (Second) of Torts § 8A, Illustration 2.

These illustrations provide examples that are indistinguishable from Gutierrez' actions in this case. Although the driving at excessive speed and failure to obey traffic laws in this case are clearly reckless and could result in some injury, it does not follow that the particular injury in this case—flipping the car and injuring its passengers—was substantially certain to result. Moreover, as Judge Bukaty indicated in his dissent below, the facts do not even indicate that the injuries were the natural and probable consequences of Gutierrez' actions. See *Thomas v. Benchmark Ins. Co.*, 36 Kan. App. 2d 409, 427-29, 140 P.3d 483 (2006) (Bukaty, J., dissenting).

It is true that the underlying facts of this case are not empathetic—the driver fled the police at excessive speeds and bottomed out at an intersection; as a result of these actions, the driver and one passenger were killed and one other passenger was severely injured. There can be no question that the driver's actions were reckless. However, our understanding of intent in Kansas does not support a conclusion that the driver *intended* to cause those injuries. The standard effectively adopted by the majority nevertheless excludes those injuries from coverage under the intentional act exclusionary clause of Guiterrez' insurance policy.

More importantly, if the adopted standard excludes from coverage injuries based on recklessness, it must also be deemed to exclude from coverage virtually any action, even those based in simple negligence, when it is substantially certain that *any* injury would result. The majority opinion thus results in the unreasonable interpretation of "intent" within the context of insurance policies to be synonymous with "causation." This interpretation is not supported by either Kansas law or by the plain language of the insurance policy in this case. See *Murray v. Modoc State Bank*, 181 Kan. 642, 646, 313 P.2d 304 (1957) ("the fundamental distinction between assault and battery, on the one hand, and negligence, on the other, is that the former is *intentional* and the latter is *unintentional*"); *Johnson County Bank v. Ross*, 28 Kan. App. 2d 8, 10-11, 13 P.3d 351 (2000) ("The law favors reasonable interpretations, and results which vitiate the purpose of the terms of the agreement to an absurdity should be avoided.").

Thus, although the majority makes the policy judgment that it is adopting a standard that is less favorable to the insurance companies than the previous "natural and probable consequences" test, the facts in this case demonstrate that this is not the case. Kansas courts have consistently reiterated that exclusionary clauses in insurance contracts should be narrowly construed against the insurer. See *Marquis v. State Farm Fire & Cas. Co.*, 265 Kan. 317, 327, 961 P.2d 1213 (1998); *Benchmark*, 285 Kan. at 922. The standard adopted by the majority in this case cannot be reconciled with this principle. Rather, the standard effectively adopted by the majority opinion leads to a much broader reading of intent than that pre-

viously applied in this state. As a result, the language of the exclusionary clause in this case, which bars coverage for "bodily injury caused intentionally by [the insured]," is interpreted to exclude from coverage not only intentional injury, but also injuries that may be inferred under the new standard as intentional since *some* injury was substantially certain to result from the insured's actions. This interpretation is by no means a narrow construction of the policy language.

Moreover, if this standard, as it is explained in the majority opinion, were to be applied only in the context of intentional act exclusionary clauses, the result would be the exclusion of acts from coverage under such clauses when those same acts might be considered reckless or negligent in Kansas tort law. This standard therefore leads to the unreasonable result of an insurance company denying coverage based on its intentional act exclusion for conduct that would not be considered intentional under Kansas tort law. Such confusion in the new standard's application leads to additional questions that the majority opinion fails to consider: How should courts determine how certain an injury must be in order to be deemed intentional, and is there any limitation to the court's announcement that an injury will be deemed intentional regardless of its relation to the character and magnitude of the probable injury? (For example, what if Gutierrez had been driving the vehicle at 60 miles per hour, or 45 miles per hour? Would this change the majority's analysis?) Likewise, how will this new rule affect the insurance company's duty to defend its insured, when acts are excluded from coverage that would be otherwise considered negligent or reckless?

Finally, the standard adopted by the majority opinion and its application of that standard to the facts in this case cannot be reconciled with the understanding of intent in Kansas. An act is deemed intentional under Kansas law when " 'the actor desires to cause [the] consequences of his act, or . . . believes that the consequences are substantially certain to result from it.' " *Baska*, 283 Kan. at 757 (quoting Restatement [Second] of Torts § 8A); see *Benchmark*, 285 Kan. at 931. The character and magnitude of the result in question are inexorably tied to this determination.

The majority opinion fails to take into account these important elements of contract interpretation and Kansas law, and the standard adopted and explained in that opinion is contrary to the law of other jurisdictions and the legal principles set forth in the Restatement. For the reasons set forth, I respectfully dissent.

LUCKERT, J., joins in the foregoing dissent.