No. 69,299

DONALD HARRIS, *Appellant*, v. ROY RICHARDS, *et al.*, *Appellees*.

(867 P.2d 325)

Opinion filed January 21, 1994.

*Donald G. Strole*, of Lawrence, argued the cause and was on the brief for appellant.

*Paul Hasty, Jr.*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *Robert J. Luder*, of the same firm, was with him on the brief for appellees.

The opinion of the court was delivered by

SIX, J.: This is a homeowners insurance policy coverage case. Donald Harris sought damages for bodily injury resulting from shotgun wounds in an action filed against Roy and Ruth Richards as administrators of the Estate of Douglas Windle Hawley, deceased. The trial court granted the Richards' motion for summary judgment, concluding that the policy did not provide coverage

because (1) the shooting was not a covered occurrence, and (2) the intentional acts exclusion applied.

Our jurisdiction is under K.S.A. 20-3018(c) (transfer from the Court of Appeals on motion of this court).

We find no error and affirm summary judgment.

### Facts

At approximately 6:50 p.m. the evening of October 27, 1989, Donald Harris was seated in the cab of his pickup truck with Kimberly Hawley. Douglas Hawley, Kimberly's ex-husband, fired two shotgun rounds into the back window of the pickup. Harris was on the driver's side and Kimberly was on the passenger side of the cab. When Douglas fired the shots he could not have seen whom he was shooting at due to darkness. The pellets struck Harris on the right side of his face, causing facial scarring and blindness. Douglas walked around to the side door and fired a third shot, which killed Kimberly. He then killed himself.

Charles and Sharon Hawley, Douglas' parents, were the named insureds on a homeowners liability policy issued by Farm Bureau Mutual Insurance Company (Farm Bureau). For purposes of the summary judgment motion, Douglas is considered to be an insured under the policy. Farm Bureau is not a party to the litigation.

Harris filed his petition on October 25, 1991, long after the four-month limit of the non-claim statute had run. See K.S.A. 1992 Supp. 59-2239(1). The defendants, Roy and Ruth Richards, are the administrators of Douglas' estate. The trial court ruled that Harris' claim against the estate is limited to any applicable insurance coverage. See K.S.A. 1992 Supp. 59-2239(2). Harris alleged that Douglas had intended only to shoot Kimberly. Harris did not specify whether his claims were based on negligence or battery.

The Richards argued that the fundamental nature of the underlying tort was that of a battery rather than negligence. Consequently, they asserted that K.S.A. 60-514(2), the one-year statute of limitations for battery, barred the claim, and they moved for dismissal. The motion was denied. The Richards cross-appeal the denial of their motion to dismiss.

Because we have affirmed the trial court's analysis of the insurance coverage issue, we find it unnecessary to address the cross-appeal other than to indicate we find no error in the trial court's ruling on the statute of limitations issue.

The Richards' summary judgment motion asserted that there was no homeowners coverage because the shooting was not an occurrence under the policy and also was excluded under the "expected or intended" acts exclusion. Harris filed a memorandum in opposition to the motion, in which he stated that he essentially agreed with the Richards' statement of uncontroverted facts. Harris also submitted additional proposed facts. These proposed facts were not supported by any record citations. The Richards' reply emphasized Harris' failure to comply with our summary judgment Rule 141(b) (1993 Kan. Ct. R. Annot. 133-34).

## Harris' Contentions on Summary Judgment

Harris contends that summary judgment was not proper because there remained issues of material fact to be resolved. He reasons that one can infer from the undisputed facts in the Richards' memorandum in support of summary judgment that Douglas intended to shoot only Kimberly and unintentionally shot Harris. He believes one also can infer that Douglas shot Harris either because of mistaken identity or without knowing of Harris' presence.

According to Harris, the factual question at issue concerns Douglas' intent when he fired the shots into the back of the pickup truck. Harris believes that because intent is a key factual issue, summary judgment is improper.

## Richards' Contentions on Summary Judgment

The Richards explain that Harris' assertion that Douglas believed Kimberly was the only person in the truck cannot be inferred from Harris' uncontroverted facts and has no basis in the record. They observe that there is no evidentiary basis for the statement that Douglas subjectively intended to injure only Kimberly. They maintain that under certain circumstances, Kansas and other jurisdictions have held that in the insurance policy context, intent to injure can be inferred as a matter of law. Consequently, they suggest that the central question in the case

at bar is whether Douglas' intent to injure Harris can be inferred as a matter of law, not whether Douglas had actual intent to injure.

Our review of the record and of the parties' contentions convinces us that summary judgment was a proper procedural vehicle for resolving the case at bar. See *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993) (rules relating to summary judgment reviewed).

### Was the Shooting an "Occurrence" Under the Policy?

The resolution of the instant action requires our interpretation of a homeowners insurance policy; consequently, the acknowledgement of our established rules of construction that are applicable to the case at bar is appropriate. We have frequently observed that "[a]s a general rule, the construction and effect of a contract of insurance is a matter of law to be determined by the court. If the facts are admitted, then it is for the court to decide whether they come within the terms of the policy." *Farm Bureau Mut. Ins. Co. v. Horinek*, 233 Kan. 175, Syl. ¶ 1, 660 P.2d 1374 (1983).

The Farm Bureau policy at issue provided coverage for bodily injury caused by an occurrence: "We will pay all sums arising out of any one loss which an insured becomes legally obligated to pay as compensatory damages, because of bodily injury or property damage caused by an occurrence to which this coverage applies." Was the shooting of Harris an occurrence under the policy? The term "occurrence" is defined in the definitions section. "Occurrence means an accident, including continuous or repeated exposure to conditions." "Accident" is not defined in the policy.

Harris asserts that the term "accident" is ambiguous as applied to the facts in the case at bar. He contends that when the policy is construed as a whole, it would not make sense to define accident so as to exclude the intentional acts of the insured because such an interpretation would render the intentional injuries exclusion "totally superfluous." Consequently, he claims the fact the term "accident" is ambiguous justifies construing the term against the insurer. According to Harris, when the term "accident" is construed against the insurer, it becomes clear that his

injuries were the result of an accident and, as such, were a covered occurrence under the policy.

Harris observes that the resulting injury which ensues from the volitional act of an insured is still an "accident" within the meaning of an insurance policy if the insured does not specifically intend to cause the resulting harm or is not substantially certain that such harm will occur, citing *Quincy Mutual Fire Ins. Co. v. Abernathy*, 393 Mass. 81, 84, 469 N.E.2d 797 (1984). Harris appears to be claiming that if intentional acts are not accidents, virtually no accidents would be covered under such a policy because all human acts, at some level, are intentional. He maintains that his injuries were caused by an accident and were, therefore, the result of an occurrence covered under the policy.

The insured's intent to injure can be inferred when the resulting injury is a natural and probable consequence of the insured's act. See *Bell v. Tilton*, 234 Kan. 461, Syl. ¶ 2, 674 P.2d 468 (1983). Douglas fired two shotgun blasts into the cab of Harris' pickup when he knew it was occupied. The natural and probable consequence of this act was that anyone occupying the cab would be injured. The shooting of Harris was not an accident under the Farm Bureau policy.

Harris' reliance on *Quincy* is misplaced. *Quincy* appears to employ the specific intent to injure rule. We do not follow the specific intent rule. Rather, we have adopted the natural and probable consequences test. See *Bell*, 234 Kan. 461, Syl. ¶ 2.

The term "occurrence" defines coverage under the Farm Bureau policy. The burden is on Harris to demonstrate that his losses fall within the scope of the policy. See *Clark Equip. Co. v. Hartford Accident & Indemnity Co.*, 227 Kan. 489, 491, 608 P.2d 903 (1980). Harris failed to controvert any of the Richards' facts.

We have explained that

"[t]he word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *Gilliland v. Cement Co.*, 104 Kan. 771, 773, 180 Pac. 793 (1919).

See *Maryland Cas. Co. v. Mike Miller Companies, Inc.*, 715 F. Supp. 321, 323 (D. Kan. 1989).

We believe that the question of coverage relates to Douglas as the insured rather than to Harris, the victim. We agree with the learned trial judge's observations:

"It would seem to me that where one fires a shotgun twice through the back of a pickup truck, knowing that some person is in the truck, but not being able to see who it is because of darkness, the injury caused to a person in the truck though claimed to be unintended, is not an accident."

### Intentional Injury Exclusion

The Farm Bureau policy contained the following exclusion: "[W]e do not cover . . . 5. Bodily injury or property damage expected or intended by an insured."

Harris asserts that his injuries were not the natural and probable consequence of Douglas' intended actions. He contends that Douglas had no reason to believe that anyone other than Kimberly was in the pickup. Harris claims that his shooting was either due to mistaken identity or was an unintentional and unforeseen injury to an innocent third party. He emphasizes that no similar fact situation has been decided under Kansas law. Harris suggests that courts in other jurisdictions have nearly uniformly held that an intentional injury exclusion is inapplicable under either the mistaken identity or innocent bystander theories.

Harris asserts that darkness contributed to Douglas' alleged mistake. Harris has not come forward with any type of proof in support of either his mistaken identity or innocent bystander theories. It seems unlikely, given the fact Harris owned the pickup, that Douglas would not have expected Harris to be present. Because applicable Kansas case law exists, there is no reason for us to focus on the law of other jurisdictions. Harris has not taken the position that we should adopt the specific injury test.

The natural and probable consequences approach has been developed in a series of five cases: *Rankin v. Farmers Elevator Mutual Insurance Company*, 393 F.2d 718 (10th Cir. 1968); *Spivey v. Safeco Ins. Co.*, 254 Kan. 237, 865 P.2d 182 (1993); *Bell*, 234 Kan. 461; *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403 (1973); and *Casualty*

*Reciprocal Exchange v. Thomas*, 7 Kan. App. 2d 718, 647 P.2d 1361, *rev. denied* 231 Kan. 799 (1982).

In *Spruill*, the insured, Spruill Motors, Inc., had performed work on Rounkles' vehicle. Rounkles drove the vehicle home without paying for services performed and garage personnel attempted to recover the vehicle. Rounkles saw his vehicle being towed away and ran up to it in an attempt to open the door, at which time his foot was run over. The policy's definition of occurrence limited its coverage to "bodily injury or property damage neither expected nor intended from the standpoint of the insured." We held that the policy did provide coverage for Spruill Motors. In so doing, we made the following statements: "Under this policy, coverage is avoided only when an act results in an intentional injury. An intentional act may result in an unintended injury." 212 Kan. at 687. Coverage was denied by the insurance carrier in *Spruill* because Rounkles' petition alleged only intentional torts, praying for punitive as well as compensatory damages. We reasoned that coverage must be determined by a good faith analysis of all information known to the insured or all information reasonably ascertainable by inquiry and investigation. 212 Kan. at 686. If knowledge that is reasonably ascertainable reveals that the acts may not have been intentional, coverage may exist, and the duty to defend arises. The act of taking Rounkles' truck was intentional, but the "taking" was not the act which caused Rounkles' injuries. The injuries were caused, if liability attaches, by the manner of moving the truck by Spruill's employees. 212 Kan. at 686-87.

*Casualty Reciprocal Exchange* was a declaratory judgment action in which the policy excluded coverage for bodily injury "expected or intended from the standpoint of the insured." 7 Kan. App. 2d at 719. The insured pointed a gun at another individual and shot him. Citing the *Spruill* case, the insured attempted to argue that coverage should be provided because there was no evidence that the shooter intended plaintiff's injury. The Court of Appeals distinguished the facts in *Spruill* and emphasized *Rankin.* 7 Kan. App. 2d at 720-21.

In *Bell*, three boys developed a game involving a BB gun. Two of the boys were in a hayloft and the third, the insured, was on top of an adjacent shed. The two boys in the loft would run back

and forth across the open door while the insured shot at them. One of the boys was injured when he peeked around the side of the hayloft door and the insured shot him in the face. The insured's liability policy excluded coverage for " 'bodily injury or property damage which is either expected or intended from the standpoint of the insured.' " 234 Kan. at 462. The insured argued that coverage should be provided because he did not have the specific intent to injure the plaintiff when he fired in plaintiff's direction. We found that there was no coverage. We endorsed the *Casualty Reciprocal Exchange* language that an insured is presumed to intend the natural and probable consequences of his or her acts. 234 Kan. at 470-72.

The uncontroverted facts in the case at bar show that Douglas fired two shotgun blasts into the cab of the pickup truck when he knew it was occupied. Harris' injuries are to be viewed as the natural and probable consequences of Douglas' act.

We recently observed in *Spivey* that "[a] liability provision in an insurance contract excluding coverage for injuries expected or intended from the standpoint of the insured excludes from coverage an injury which the insured intentionally caused." 254 Kan. 237, Syl. ¶ 5. *Spivey* also reiterates our analysis of the natural and probable consequences. test as discussed and applied in *Bell*. 254 Kan. at 245.

Harris uses the rules for summary judgment in an attempt to assert that certain inferences can be drawn from the facts concerning the mistaken identity or innocent bystander scenarios. However, the rules of summary judgment do not afford a party with such creative license. There must be facts in the record from which the inferences can be drawn. The record is devoid of any such facts.

Harris' injuries were a natural and probable consequence of the shooting.

Affirmed.

ABBOTT, J., not participating.

PRAGER, C.J. Retired, assigned.