(954 P.2d 7)
No. 77,550

BARBARA HARMON, *Appellant*, v. SAFECO INSURANCE COMPANY OF AMERICA, *Appellee*.

Opinion filed February 6, 1998.

*Bruce W. Beye*, of Overland Park, for the appellant.

*R. Alexander Pryor* and *Edward L. Smith*, of Kansas City, Missouri, for the appellee.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

PIERRON, J.: This appeal arises from an action for damages filed by Barbara Harmon seeking recovery from Safeco Insurance Company of America (Safeco) under the terms and conditions of an insurance policy. Harmon argues the district court erroneously entered summary judgment in favor of Safeco. The district court found Harmon failed to prove that the damage to her opal jewelry was covered as an accidental direct physical loss.

The facts in this case are not in dispute. The interpretation of the coverage provisions of an insurance policy is at issue.

In 1994, Harmon purchased a homeowners insurance policy from Safeco. The policy contained a scheduled personal property endorsement or rider specifically covering certain opal jewelry. Harmon testified in her deposition that the opals were stored at home in a separate jewelry box, that she wore the opals an average of 5 to 10 times per year, that no one else wore the opals, and that she does not remember striking or dropping them.

In 1995, Tom Tivol, a jeweler, viewed the stones and determined that they were "crazed." Crazing is spider web cracking or fracturing. Opals are composed of a small percentage of water. Because opals are a porous stone, the water evaporates, and as the stone

becomes drier it can develop cracks or fractures. As a result of this crazing, the opals in question now have little value.

Harmon submitted a claim under her homeowners insurance policy for damage to the opals. Safeco denied liability, concluding the loss was excluded from the insurance policy. Harmon filed a petition for damages for Safeco's failure to pay her claim. Both parties filed motions for summary judgment.

The opals in this case were insured under Option E of Harmon's insurance policy. Paragraph 3 of Option E, entitled LOSSES WE COVER, stated: "We insure for *accidental direct physical loss* to the property described,except as limited or excluded." (Emphasis added.) As for the relevant exclusions, the rider related back to the exclusions in the general insurance policy which excluded loss caused by "a. wear and tear, marring, deterioration; b. inherent vice, latent defect, mechanical breakdown. "

The district court made the following findings. The experts agreed that not all opals craze. Harmon's expert testified in deposition that an opal can craze when it is struck at an angle or at a particular force. Harmon's expert also testified that crazing could possibly be caused by wear and tear, marring, deterioration, something inherent in the stone, or a latent defect. On the other hand, Safeco's expert testified in deposition that opals craze because they dehydrate and that crazing cannot be caused by a blow or striking.

Harmon's expert testified he was unable to determine the cause of the crazing in the opals in question.

In support of her motion for partial summary judgment, Harmon argued that Safeco knew or should have known of potential losses due to crazing and if it was the intent to exclude those losses, the exclusion provision should have so stated. Harmon contended that since Safeco did not exclude the loss, the policy must be construed as an unclear or ambiguous insurance policy and interpreted most favorably to the insured and coverage found to exist.

In its motion for summary judgment, Safeco argued that crazing was not a covered loss within the meaning of the insurance policy and the loss, if any, was an excluded loss within the meaning of the policy. The district court granted summary judgment in favor of Safeco, finding Harmon failed to prove that her claimed loss was

of a type included in the coverage provisions of the insurance contract. Specifically, the district court found that in order for there to be coverage under the insurance policy, there must be an accidental direct physical loss to the opals. The court could find no such evidence.

The question presented is whether the damage to the opals caused by spontaneous crazing is an accidental direct physical loss under the insurance policy.

Our standard of review for cases decided on summary judgment is well established:

"The burden on the party seeking summary judgment is a strict one. The trial court is required to resolve all facts and inferences which may reasonably be drawn from the evidence in favor of the party against whom the ruling is sought. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. When opposing a motion for summary judgment, an adverse party must come forward with evidence to establish a dispute as to a material fact. In order to preclude summary judgment, the facts subject to the dispute must be material to the conclusive issues in the case. On appeal we apply the same rule, and where we find reasonable minds could differ as to the conclusions drawn from the evidence, summary judgment must be denied. [Citations omitted.]" *Mitzner v. State Dept. of SRS*, 257 Kan. 258, 260-61, 891 P.2d 435 (1995).

The district court recognized that Safeco's insurance policy did not contain a definition for "accidental direct physical loss." In such a case, unless contrary intent is shown, words in an insurance policy are to be given the natural and ordinary meaning they convey to the ordinary mind. See *Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.*, 189 Kan. 528, 532, 370 P.2d 396 (1962). The pivotal word to define is "accidental."

The district court relied on *Harris v. Richards*, 254 Kan. 549, 867 P.2d 325 (1994), where the court interpreted the term "accident."

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of

force.' *Gilliland v. Cement Co.*, 104 Kan. 771, 773, 180 Pac. 793 (1919)." 254 Kan. at 553.

The definition of "accidental" in Black's Law Dictionary is very similar to that used by the court in *Harris*. Black's defines "accidental" as "[h]appening by chance, or unexpectedly; taking place not according to usual course of things; casual; fortuitous." Black's Law Dictionary 16 (6th ed. 1990). Safeco cites the definition of "accidental" from Webster's Collegiate Dictionary, 10th ed.: "[a]rising from extrinsic causes . . . occurring unexpectedly or by chance." Safeco then cites Webster's definition of "extrinsic" as "[f]rom without . . . originating from or on the outside . . . originating outside a part and acting upon the part as a whole . . . Extrinsic applies to what is distinctly outside the thing in question or is not contained in or derived from its essential nature."

Harmon argues that even under the definition of accident set forth in *Harris*, it can certainly be argued that crazing is an undesigned, sudden, and unexpected event; is afflictive and unfortunate; and at times is caused by force. Harmon notes that the definition of accident does not *require* force, but that the critical event is often accompanied by a manifestation of force.

Harmon contends crazing causes a direct physical loss to opals regardless of whether it arises by the application of force or occurs spontaneously. Her expert testified it is impossible to determine what caused the opals to craze, but she contends the presence or absence of force is irrelevant. Harmon argues loss by crazing should be viewed within the broad, universal definition of accidental as an unintentional, unforeseen act causing loss to the stones. In this light, Harmon argues that although there was no intentional act causing the opals to craze, the trial court erred in requiring her to prove that intentional or unintentional force was the cause of the loss. She argues the loss to the opals was truly accidental and should be covered under Safeco's insurance policy.

In *Chute v. North River Insurance Co.*, 172 Minn. 13, 214 N.W. 473 (1927), the court considered the coverage of an all risk insurance policy for a cracked fire opal. The subject insurance policy covered jewelry "'against all risks of loss or damage during trans-

portation (including all risks of loss or damage caused by breakage, fire and theft) or otherwise.' " 172 Minn. at 13. With commendable candor, the plaintiff's complaint stated that the "'crack was due to an inherent vice in said opal and was not the result of outside force.' " The *Chute* court phrased the question presented as: "[C]an there be recovery for mere cracking arising from an inherent defect or tendency of the insured property and not at all from extraneous and fortuitous cause?" 172 Minn. at 14.

For supporting authority, the *Chute* court analogized the situation to marine insurance policies insuring against the perils of the sea. Within that context, marine insurers were not liable for loss or deterioration which arose solely from a principal decay or corruption inherent in the subject insured or from its proper vice, *i.e.*, fruit rots, flour heats, or wine sours. In such situations, the subject loss is not from external damage, but entirely from internal decomposition. The *Chute* court stated: "It is no longer intolerable that the owner should receive pay where goods destroy themselves, but the law remains that he cannot get it under a contract of insurance that does not make it clear that such is the intent and such the indemnity purchased." 172 Minn. at 14-15.

The *Chute* court denied liability and found the insurance policy covered loss or damage from fortuitous and extraneous circumstances rather than warranty of the quality and durability of chattels. 172 Minn. 15-16. The court stated:

"The loss arising from the cracking of an opal because alone of its inherent tendency to disintegrate cannot be recovered under an 'all risk' policy of insurance, even though it covers breakage, if it does not explicitly include loss arising from inherent weakness or tendency to dissolution of the article insured." 172 Minn. 13, Syl.

Harmon did not present any evidence that an outside force caused the opals to craze. She testified she did not remember striking or dropping the opals. Her expert testified there was no way to ascertain the cause of the crazing. The fact of the matter is, we do not know what caused Harmon's opals to craze. However, both experts testified that opals have a natural tendency, if not a predisposition, to craze. Therefore, absent some indication the crazing was caused by an outside force, we must assume it was caused by

an inherent defect or tendency within the opals and not from an extraneous and fortuitous cause.

We decline Harmon's invitation to consider crazing within the "more universal" definition of "accidental" as an unintentional and unforeseen act. Harmon's position would allow claims for defects that are inherent in insured property, such as wood rotting, wine spoiling, and metal rusting.

The district court did not err in finding Harmon failed in her burden to present evidence that the damage to the opals was an accidental direct physical loss.

Harmon also contends if it was Safeco's intent to exclude the opals from damage due to crazing, then the exclusionary language should have been expressly included. Additionally, Harmon maintains if Safeco was unaware of crazing, then Safeco could not have had any intent at the time of contracting to exclude such losses. Harmon concludes Safeco's current position that all damage due to crazing is excluded is unsupported by the language of the policy and case law and clearly violates public policy.

"The interpretation and legal effect of written documents are matters of law upon which our standard of review is unlimited." *Kansas Gas & Electric Co. v. Will Investments, Inc.*, 261 Kan. 125, Syl. ¶ 1, 928 P.2d 73 (1996). "Whether an instrument is ambiguous is a matter of law to be decided by the court. As a general rule, if the language of a written instrument is clear and can be carried out as written, there is no room for rules of construction." *Godfrey v. Chandley*, 248 Kan. 975, Syl. ¶ 2, 811 P.2d 1248 (1991). "Where the terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail." *American Media, Inc. v. Home Indemnity Co.*, 232 Kan. 737, Syl. 4, 658 P.2d 1015 (1983).

"To be ambiguous, a contract must contain a provision or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation are applied to the instrument and there remains a genuine uncertainty which one of two or more meanings is the correct

meaning. [Citation omitted.]" *Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co.*, 248 Kan. 657, 662, 810 P.2d 283 (1991).

Harmon does not explain what language of the insurance contract is allegedly ambiguous. She merely claims the policy is ambiguous as to the exclusion question. The district court rendered the proper conclusion that the absence of crazing as an exclusion does not render the policy ambiguous. Under Kansas law, the fact that an insurance policy does not define each term within it does not somehow make an undefined term ambiguous; ambiguity arises only if language at issue is subject to two or more reasonable interpretations and its proper meaning is uncertain. *Home Indem. Co. v. Hyplains Beef, L.C.*, 893 F. Supp. 987, 991 (D. Kan. 1995), *aff'd* 89 F.3d 850 (10th Cir. 1996).

Although Harmon's argument is ingenious and interesting, on these facts, we find no ambiguity on the issue of coverage. Since crazing does not constitute accidental direct physical loss, the exclusion issue is moot.

Affirmed.