# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

No. 11-1489

_____

| | | |
|---|---|---|
| Lewis A. Heacker, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Missouri. |
| Safeco Insurance Company | * | |
| of America;  Nationwide Mutual | * | |
| Insurance Company; Jane Doe, JW; | * | |
| Jessica Wright; Beth C. Boggs; | * | |
| Nationwide Insurance | * | |
| Company of America, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted:  December 15, 2011
Filed:  April 17, 2012

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.


Lewis A. Heacker sued Jessica J. Wright and her insurers (including Nationwide Insurance Company of America) for equitable garnishment to collect a

state court judgment. The district court[1] granted summary judgment to the insurers. Heacker appeals as to Nationwide. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

I.

Lewis Heacker sued Jessica Wright in the Circuit Court of Jackson County, Missouri, for hacking into his voicemail and Facebook services, sending disparaging letters and emails about him, and making anonymous phone calls and texts to harass or defame him, among other things. This conduct began around 2005, continuing for nearly five years. Heacker alleged emotional distress, which manifested itself physically and through post-traumatic stress disorder and alcoholism.

Heacker and one of Wright's insurers settled during trial. Heacker then amended his complaint to include a claim that Wright negligently failed to supervise her children, who may have participated in his harassment or defamation. The settling insurer and Heacker agreed to allow the judge to find damages within the limit set by the settlement agreement. Wright did not participate in the settlement. After trial, Heacker obtained a $7.3 million judgment ($5 million for punitive damages) against Wright for breach of fiduciary duty/confidential relationship, negligent failure to supervise children (Heacker and her own children), premises liability, negligent infliction of emotional distress, general negligence, defamation, invasion of privacy, and tortious interference/injurious falsehood.

---

[1]The Honorable Gary A. Fenner, United States District Judge for the Western District of Missouri.

To satisfy the judgment, Heacker sued Wright and her remaining insurers in an equitable garnishment action. The case was removed to federal court.

For about six months beginning in May 2006, Jessica Wright was insured by Nationwide Insurance Company under a Homeowner's Policy. For a year beginning at the same time, she was also insured under a Nationwide Umbrella Policy. The district court found that the acts during the periods of the Nationwide policies were text messages, emails about Heacker, and harassing phone calls placed through a phone-number/voice alteration service. These acts correspond to the negligent failure to supervise children, negligent infliction of emotional distress, defamation, and invasion of privacy claims.

## II.

This court reviews de novo a grant of summary judgment. *Mason v. Corr. Med. Servs., Inc.*, 559 F.3d 880, 884 (8th Cir. 2009). Summary judgment should be granted when — viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences — the record shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *See* **Fed. R. Civ. P. 56(a)**; *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). An issue is "genuine" if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "As to materiality, the substantive law will identify which facts are material . . . ." *Id.* This court may affirm the summary judgment decision on any basis supported by the record. *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005).

Missouri law applies to the equitable garnishment issues in this diversity case. To collect a judgment through equitable garnishment, the plaintiff has the burden to show by substantial evidence that the claim is within the coverage provided within the insurance contract. *Peck v. Alliance Gen. Ins. Co.*, 998 S.W.2d 71, 74 (Mo. App. 1999). To fall within the coverage provided, the policy must have been in effect when the covered acts occurred and cover the damages awarded in the judgment. *Taggart v. Maryland Cas. Co.*, 242 S.W.3d 755, 758 (Mo. App. 2008).

Kansas law applies to the interpretation of the insurance policies here. *Sheehan v. Northwestern Mut. Life Ins. Co.*, 44 S.W.3d 389, 397 (Mo. App. 2000) ("In an action between the parties to an insurance contract, the principal location of the insured risk is given greater weight than any other single contact in determining the state of applicable law provided that the risk can be located in a particular state."). Kansas law dictates that limiting or exclusionary insurance provisions should be construed narrowly. *Marquis v. State Farm Fire & Cas. Co.*, 961 P.2d 1213, 1220 (Kan. 1998). In addition, under Kansas law, the liability theory asserted at trial, rather than the actual cause of the accident, generally governs insurance coverage. *Id.* at 1221.

Heacker argues that because Nationwide did not defend the original action or reserve its rights, it is estopped from asserting defenses now. Coverage, however, cannot be created by estoppel where it does not exist. *Aks v. Southgate Trust Co.*, 844 F. Supp. 650, 660 (D. Kan. 1994); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 104 P.3d 997, 1005 (Kan. App. 2005); *Morris v. Travelers Ins. Co.*, 546 S.W.2d 477, 481 (Mo. App. 1976).

A.

The Homeowner's Policy covered "bodily injury" caused by an "occurrence."[2] The district court held that there was no "occurrence." The Policy defines an occurrence as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Policy does not define "accident." The burden is on Heacker to demonstrate that his claim is within the scope of the Policy. *Harris v. Richards*, 867 P.2d 325, 328 (Kan. 1994), *citing Clark Equip. Co. v. Hartford Accident & Indem. Co.*, 608 P.2d 903, 906 (Kan. 1980). Heacker argues that an accident includes negligent failure to supervise children and the negligent infliction of emotional distress. The Kansas Supreme Court has defined "accident" in an insurance policy clause — identical to the one here — as an "undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." *Lee Builders*, 137 P.3d 486, 492 (Kan. 2006), *citing Harris*, 867 P.2d at 328 (internal quotation marks and citation omitted). Heacker argues essentially that an act lacking legal intent is equivalent to an accident. The Kansas Supreme Court does not agree.

According to Kansas law, the theory of liability at trial — not the actual cause of the accident — generally governs insurance coverage. *Marquis*, 961 P.2d at 1221. Heacker, a Missouri resident, obtained a judgment in Missouri on his tort claims, which are governed by Missouri law. *See Stricker v. Union Planters Bank*, 436 F.3d 875, 878 (8th Cir. 2006) ("When determining choice-of-law issues in tort actions, Missouri courts apply the 'most significant relationship' test." (citation omitted)). A judgment for negligent infliction of emotional distress means that Wright either did expect — or should have expected — Heacker's injuries. *See K.G. v. R.T.R.*, 918 S.W.2d 795, 800 (Mo. banc 1996) ("To plead an action for negligent infliction of

_____

[2]The Umbrella Policy also covers "bodily injury" due to an "occurrence."

-5-

emotional harm, a plaintiff must allege the duty exists, that the defendant should have realized that his conduct involved an unreasonable risk of causing emotional distress, and the distress or mental injury must be medically diagnosable and must be of sufficient severity so as to be medically significant."). The same is true for a judgment for negligent failure to supervise children. *See Cook v. Smith*, 33 S.W.3d 548, 554-55 (Mo. App. 2000). The facts in this case indicate that Wright expected Heacker's injuries. Under Missouri law, neither of the negligence theories involves undesigned, sudden, or unexpected events (or a manifestation of force).[3]

The district court also held that the Homeowner's Policy's bodily injury coverage would not apply to Heacker's mental illnesses and alcohol addiction, relying on *Rockgate Management Co. v. CGU Insurance, Inc.*, 88 P.3d 798, 804 (Kan. App. 2004). The Policy here defines bodily injury as "bodily harm, sickness or disease." Heacker argues that his physical symptoms of distress, PTSD, and alcoholism are "bodily injury" under this definition. The court in *Rockgate* pointed out that the interpretation of the contract — not any state law — governs the definition of bodily injury. In that case, the contract — similar to the one here — defined bodily injury as "bodily injury, sickness or disease." *Id.* The *Rockgate* court stated: "Where the policy defines bodily injury as bodily injury, it seems to imply that actual physical injury must occur for policy coverage." *Id.* Based on this, the district court here correctly concluded: "Physical manifestations of emotional distress or other related emotional harm may offer insight into the severity or extent of the emotional trauma suffered, but, absent some physical, bodily harm, such physical manifestations arise out of and are directly caused by purely emotional injury, which is clearly excluded from coverage." Heacker argues that PTSD and alcoholism are sicknesses or diseases.

---

[3]The Policy's coverage also excludes injury that is "expected or intended," even if the resulting injury "is of a different kind, quality or degree than initially expected or intended" or "is sustained by a different person, entity, real or personal property, than initially expected or intended."

The *Rockgate* case indicates that Kansas is one of many jurisdictions where the word "bodily" in the bodily injury definition modifies injury, sickness, and disease. *See id.* (declining to adopt New York's definition of "bodily injury," which includes mental sickness, because of a "disconnect" between that definition and the specific language of the policy); *Citizens Ins. Co. of Am. v. Leindecker*, 962 S.W.2d 446, 452 (Mo. App. 1998) (compiling cases); *see also Lapeka, Inc. v. Security Nat'l Ins. Co.*, 814 F. Supp. 1540, 1548 (D. Kan. 1993) (concluding Kansas would not find bodily injury in a case of emotional distress "severe enough to manifest itself in the form of physical injury"). PTSD and alcoholism are not bodily sicknesses or diseases and are excluded from coverage.

B.

The Umbrella Policy covers personal injury arising from defamation or privacy violations. It excludes, however, coverage for personal injury arising from mental abuse. The term "mental abuse" is not defined in the Policy. Heacker says this renders the term ambiguous. "The failure of an insurance policy to specifically define a word does not necessarily create ambiguity." *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 525 (Kan. 1998) (citation omitted). "The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Id.* at 519. The possibility of slight deviations in the insured's perceived meanings does not create ambiguity. *Id.* at 525 ("Although assault and battery have varying definitions, these definitions only slightly deviate and regardless of the definition used, they all convey the same general meaning. In the case at hand, the definitions of assault and battery do not present various and distinct definitions."). A reasonably prudent insured would discern that mental abuse is mental maltreatment, often resulting in mental or emotional injury. *See* **Black's Law Dictionary 10** (8th ed. 2004) (defining abuse as "[p]hysical or mental maltreatment, often resulting in mental, emotional,

sexual, or physical injury."); *cf. **Bugg***, 962 P.2d at 524 (interpreting insurance policy exclusion using Black's Law definitions of "assault and battery"). According to the Policy, the mental abuse exclusion includes both intentional and unintentional acts. Thus, the acts in the case — whether or not they were the result of Wright's negligence — were mental abuse. Heacker cites Kansas criminal cases and statutes defining mental abuse. These cases and statutes are irrelevant because according to the Policy, the mental abuse exclusion applies whether or not the acts violate a criminal code or accompany physical or sexual abuse. Heacker finally argues that even if some of the defamatory acts and invasions of privacy were mental abuse, not all of them were. All of the acts, however, were maltreatment meeting the reasonable definition of mental abuse.[4]

*******

The judgment of the district court is affirmed.

_____

_____

[4]Heacker alleges that the district court did not address the Umbrella Policy's "personal injury" coverage. To the contrary, the court named and quoted both Nationwide policies in its order and specifically noted the mental abuse exception before ruling that the Policy did not provide coverage. Moreover, Nationwide's Summary Judgment Motion argued "there was no coverage and no duty to defend since coverage for mental abuse and emotional distress was excluded by the policies . . .", and this court may affirm the summary judgment decision on any basis supported by the record. ***Woods***, 409 F.3d at 990; *cf. **Figg v. Russell***, 433 F.3d 593 (8th Cir. 2006) ("Sua sponte orders of summary judgment will be upheld 'only when the 'party against whom judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted.''" (citations omitted)).

-8-