# United States Court of Appeals
### For the Eighth Circuit

_____

No. 12-2757
_____

Ranna Muor

*Plaintiff - Appellant*

v.

U.S. Bank National Association, doing business as U.S. Bank

*Defendant - Appellee*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: March 14, 2013
Filed: June 13, 2013

_____

Before WOLLMAN and COLLOTON, Circuit Judges, and HOLMES,[1] District
Judge.

_____

WOLLMAN, Circuit Judge.

Ranna Muor sued U.S. Bank National Association (U.S. Bank), alleging that
U.S. Bank had discriminated against her based on her race and national origin and

---

[1]The Honorable P.K. Holmes, III, Chief Judge, United States District Court for
the Western District of Arkansas, sitting by designation.

had retaliated against her for opposing the discrimination, in violation of Title VII of the Civil Rights Act of 1964 (Title VII) and the Minnesota Human Rights Act (MHRA). The district court[2] granted summary judgment in favor of U.S. Bank on both claims. We affirm.

## I. Background

Because we are reviewing a grant of summary judgment, we view the facts in the light most favorable to Muor. See Onyiah v. St. Cloud State Univ., 684 F.3d 711, 715 (8th Cir. 2012) (standard of review). Muor is a native of Cambodia. She joined U.S. Bank in 1983 and worked in a variety of positions until 1999, when she became an International Banking Specialist. Her responsibilities in this position included advising export letters of credit and sorting mail, among other things.

Bruce Staples managed U.S. Bank's Import/Export Letters of Credit Department. He began supervising Muor and Kathleen Czanstkowski in 1999. As Muor's supervisor, Staples completed Muor's performance evaluations from 2000 to March 2004. Although Staples noted positive aspects of Muor's performance and gave her overall ratings of "solid performance," he consistently indicated that Muor needed to improve her accuracy and attention to detail, her understanding of her job, and her ability to complete her work with minimal supervision or assistance. In approximately 2003 or 2004, Czanstkowski told Staples that Muor could not write or speak English and that she "should go back to Cambodia where she came from." Czanstkowski also told Staples that Muor and another Asian employee had "slanty eyes."

---

[2]The Honorable John R. Tunheim, United States District Judge for the District of Minnesota.

In 2005, Barbara Engen began supervising Muor. Engen issued Muor a favorable performance evaluation in 2005, giving her an overall rating of "solid performance." Czanstkowski became Muor's supervisor in 2006 and completed Muor's 2006 and 2007 performance evaluations, giving her an overall rating of "solid performance" in both evaluations. Czanstkowski noted in Muor's 2006 evaluation that she had difficulty with complex transactions and that she needed to give more attention to detail in order to avoid submitting work with errors. Czanstkowski was more critical of Muor in the 2007 performance evaluation, commenting that Muor had demonstrated a skill level below that of her tenure, that Muor needed to stop making so many errors in her work, and that Muor had yet to learn all the aspects of her job.

Czanstkowski and Engen presented Muor with the 2007 performance evaluation during a 2008 meeting. Muor told Czanstkowski and Engen that she felt that she was being discriminated against and wrote in the employee comments section of the evaluation: "I strongly disagree with this review. It is inconsistent and contradective [sic]." Engen contacted Sharon Bach, a human resources employee, and told her about Muor's complaint of discrimination. Pursuant to Bach's instructions, Engen had a follow-up meeting with Muor to discuss the complaint further. Bach advised Muor that she could submit a rebuttal to the performance evaluation. Muor never did so.

Engen completed Muor's 2008 performance evaluation with assistance from Czanstkowski and Bach. Engen noted in the evaluation's performance goals section that in June 2008, U.S. Bank had relieved Muor of her responsibility to advise export letters of credit and assigned her the less complicated task of documentary collection. Muor returned to advising export letters of credit in December 2008 when the volume of credit letters required U.S. Bank to reassign her. Engen gave Muor an overall rating of "needs improvement," explaining that Muor continued to perform below expectations and that she did not fully understand the more complicated aspects of

her job. Engen noted that Muor's accuracy had not improved, resulting in too many errors and wasted company time.

In connection with the 2008 performance evaluation, Czanstkowski composed a written warning for Muor with assistance from Engen and Bach. The warning listed examples of errors that Muor had made during 2008 and early 2009 and explained that Muor was receiving the warning because of her poor performance. The warning noted that despite her unfavorable 2007 evaluation, Muor had failed to improve her performance. Under U.S. Bank policy, a written warning precludes an employee from applying for other positions in the company or receiving a salary increase or bonus until the employee's performance improves.

In late February 2009, Engen and Czanstkowski presented Muor with her 2008 performance evaluation and the written warning, following which Muor became ill and went home. Several days later, Muor dropped off letters at U.S. Bank, accusing Czanstkowski of discrimination and disputing her written warning and 2008 evaluation. After using a few vacation days, Muor went on short-term disability leave. Bach attempted to speak with Muor about her letters, but Muor replied that she did not want to talk about it. In April 2009, Muor filed a charge of discrimination with the Minneapolis Department of Civil Rights.

Muor returned to work on a part-time basis for two weeks in June 2009. She testified that during that time Czanstkowski and Engen instructed her to keep the discrimination complaint confidential. In December 2009, U.S. Bank hired Jody Brown as an International Banking Specialist.

On January 5, 2010, Bach sent Muor a letter explaining that her absence from work had been unapproved since July 1, 2009, and that U.S. Bank would fill her position if she did not return to work by January 18, 2010. The letter encouraged Muor to contact Bach to discuss possible positions should Muor's doctor release her

to work by March 2010. On January 18, 2010, Muor sent Bach an email explaining that her doctor would not allow her to return to work.

In a February 25, 2010, email, Bach informed Muor that she had received a February 23, 2010, fax from Muor's doctor indicating that Muor could return to work on a part-time basis on March 2, 2010. Bach's email explained that because Muor had not returned to work in January, U.S. Bank had filled her position. Bach offered Muor a position as a part-time teller, which Muor rejected. Muor applied online for a position with U.S. Bank's Mortgage Closing Department but did not receive an interview. On March 17, 2010, U.S. Bank offered Muor a position as an International Banking Specialist 2, reporting to Mary Hudoba. This position promised the same base salary as Muor's former position as an International Banking Specialist 3. In a March 19, 2010, email to Bach, Muor declined the position, explaining that she could not "bring [herself] to come back to the company based on their reaction to [her] discrimination and harassment complaint." In her deposition, Muor testified that Hudoba previously had harassed her because she was Cambodian. Although Muor indicated in her deposition that Hudoba's treatment of her was part of the reason she declined the International Banking Specialist 2 position, she neither explained this to U.S. Bank nor reported Hudoba's alleged discrimination. Muor resigned her employment with U.S. Bank in March 2010.

Muor then brought this suit, asserting claims of race and national origin discrimination and retaliation in violation of Title VII and the MHRA. In granting summary judgment in favor of U.S. Bank on both claims, the district court determined that Muor had failed to present a prima facie case of discrimination. Alternatively, the district court concluded that even if Muor had presented a prima facie case, she had failed to demonstrate that U.S. Bank's legitimate reason for the adverse employment action was a pretext for discrimination. As for Muor's retaliation claim, the district court found that Muor had failed to present a prima facie case of retaliation.

## II. Discussion

We review *de novo* the district court's grant of summary judgment. Onyiah, 684 F.3d at 715. "Summary judgment should be granted when—viewing the facts most favorably to the nonmoving party and giving that party the benefit of all reasonable inferences—the record shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Id. (quoting Heacker v. Safeco Ins. Co. of Am., 676 F.3d 724, 726-27 (8th Cir. 2012)).

Muor argues that she has offered sufficient evidence to survive summary judgment on both her discrimination and retaliation claims. Under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), Muor has the initial burden of establishing a prima facie case. Torgerson v. City of Rochester, 643 F.3d 1031, 1046 (8th Cir.) (en banc), *cert. denied*, 132 S. Ct. 513 (2011); Fercello v. Cnty. of Ramsey, 612 F.3d 1069, 1077 (8th Cir. 2010). If Muor establishes a prima facie case, then the burden of production shifts to U.S. Bank to proffer legitimate, non-discriminatory, non-retaliatory reasons for its actions. Torgerson, 643 F.3d at 1046; Fercello, 612 F.3d at 1078. Once U.S. Bank meets this burden, Muor must produce evidence sufficient to create a genuine issue of material fact concerning whether U.S. Bank's proffered reasons are pretext for discrimination or retaliation. Torgerson, 643 F.3d at 1046; Fercello, 612 F.3d at 1078. "The same analysis applies to both MHRA and Title VII claims." Torgerson, 643 F.3d at 1043.

### A. Race and National Origin Discrimination Claim

To establish a prima facie case of discrimination, Muor must show that 1) she is a member of a protected class; 2) she met U.S. Bank's legitimate expectations; 3) she suffered an adverse employment action; and 4) the circumstances give rise to an inference of discrimination. Guimaraes v. SuperValu, Inc., 674 F.3d 962, 973-74 (8th Cir. 2012); Gibson v. Am. Greetings Corp., 670 F.3d 844, 853-54 (8th Cir.

2012). Even assuming that the written warning constituted an adverse employment action and that Muor otherwise can establish a prima facie case, Muor has failed to demonstrate that U.S. Bank's legitimate, non-discriminatory reason for issuing the warning—Muor's poor performance—was pretextual.

Muor argues that U.S. Bank's rationale for issuing the written warning has no basis in fact because she was told in June 2008 that she would be evaluated on her collection duties, not her advising work. See Torgerson, 643 F.3d at 1047 (plaintiff may demonstrate material issue of fact concerning pretext by showing that employer's rationale is unworthy of credence because it has no basis in fact). The evidence she cites to support her argument is a document from Czanstkowski that explained that Muor was being reassigned to collection duties and stated: "At times you might be asked to advise Letters of Credit, but that would be only when staff is not sufficient[.] You are being evaluated on you [sic] new desk job duties and not that of advising." The document, however, does not establish that U.S. Bank would forgo evaluating Muor on the advising work she had completed prior to her June 2008 change of duties. Nor does it establish that U.S. Bank would forgo evaluating Muor's work as an advisor if she were to be reassigned to advising letters of credit. Accordingly, this evidence does not create an issue of fact that U.S. Bank's rationale for issuing the written warning lacked a basis in fact.

Muor also argues that Czanstkowski's discriminatory animus more likely than not motivated the decision to issue the written warning. See id. (plaintiff may demonstrate material issue of fact concerning pretext by showing that discriminatory animus more likely motivated employer). Muor contends that Czanstkowski's criticism of her performance, as well as Czanstkowski's alleged discriminatory statements, constitute evidence of U.S. Bank's discriminatory animus. Although Muor's 2007 and 2008 performance evaluations may have been more exacting than earlier evaluations, they reiterated the problems that previously had been identified by Staples. As for Czanstkowski's statements that Muor and another Asian employee

-7-

had "slanty eyes" and that Muor could not write or speak English and should return to Cambodia, these statements were made in 2003 or 2004, well before Czanstkowski became Muor's supervisor and several years before she issued the written warning. Moreover, Muor has not set forth evidence showing that the remarks were related to the decision to issue the written warning. See Simmons v. Océ-USA, Inc., 174 F.3d 913, 916 (8th Cir. 1999) (given the "comprehensive objective evidence" of employee's poor job performance, supervisor's racially offensive comments directed toward employee but made outside decision making process and two years before employee's termination were insufficient evidence of pretext to survive summary judgment). In light of the lack of evidence showing that discriminatory animus motivated the adverse employment action and U.S. Bank's well-documented history of Muor's job performance, Czanstkowski's statements and criticism of Muor's performance do not establish a material issue of fact concerning pretext.

Muor further contends that U.S. Bank's failure to follow its own practices shows that the decision to issue the written warning was pretextual. See Lake v. Yellow Transp., Inc., 596 F.3d 871, 874 (8th Cir. 2010) (plaintiff may show pretext by showing that employer failed to follow its policies). Specifically, she contends that U.S. Bank deviated from its evaluation process when Engen, along with Czanstkowski and Bach, prepared her 2008 performance evaluation. Engen testified that although she does not usually prepare performance evaluations for people in Muor's position, she helped prepare Muor's 2008 evaluation because Czanstkowski was new to the management position and because U.S. Bank wanted to document its attempt to accommodate Muor through reassignment. Muor offers no further evidence of a policy violation, nor does she explain how this purported policy violation is probative of U.S. Bank's discriminatory intent.

Finally, Muor argues that Czanstkowski treated non-Asian employees differently than she treated Muor by not disciplining the non-Asian employees for their mistakes. "At the pretext stage, 'the test for determining whether employees are

similarly situated to a plaintiff is a rigorous one.'" Bone v. G4S Youth Servs., LLC, 686 F.3d 948, 956 (8th Cir. 2012) (quoting Rodgers v. U.S. Bank, N.A., 417 F.3d 845, 853 (8th Cir. 2005), *abrogated on other grounds by* Torgerson, 643 F.3d 1031). To succeed with this argument, Muor must show that she and the non-Asian employees were "similarly situated in all relevant respects." Id. (quoting Rodgers, 417 F.3d at 853). That is, the employees "used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Wierman v. Casey's Gen. Stores, 638 F.3d 984, 994 (8th Cir. 2011) (quoting Cherry v. Ritenour Sch. Dist., 361 F.3d 474, 479 (8th Cir. 2004)). In support of her contention that Czanstkowski treated her differently, Muor relies on testimony by several non-Asian employees who worked at U.S. Bank under Czanstkowski's supervision. Although the employees discuss making errors in general and not receiving written warnings for them, Muor has not established that these other employees were similarly situated to her in all relevant respects. Muor offers no evidence that the comparator employees made similar errors, made errors as frequently as she, or that their level of experience was commensurate to hers.

We thus conclude that Muor has not met her burden of demonstrating pretext. Accordingly, summary judgment in favor of U.S. Bank on Muor's discrimination claim was proper.

## B. Retaliation Claim

Muor argues that U.S. Bank violated Title VII and the MHRA by retaliating against her for complaining internally of discrimination and for filing a discrimination charge with the Minneapolis Department of Civil Rights. To establish a prima facie case of retaliation, Muor must demonstrate that 1) she engaged in protected activity; 2) she suffered a materially adverse employment action; and 3) the materially adverse

employment action was causally connected to the protected activity. Guimaraes, 674 F.3d at 978.

Muor contends that the events leading to U.S. Bank's filling her position and offering her two other positions constituted an adverse employment action. Even assuming that Muor engaged in protected activity and suffered an adverse employment action, she has not shown a causal connection between her complaints of discrimination and the adverse employment action. Relying on Bassett v. City of Minneapolis, 211 F.3d 1097 (8th Cir. 2000), *abrogated on other grounds by* Torgerson, 643 F.3d 1031, Muor argues that U.S. Bank's pattern of adverse actions following her complaints of discrimination demonstrates a causal connection. In Bassett, we found sufficient evidence of a causal connection to survive summary judgment where the employer engaged in an escalating pattern of discipline against the employee in very close temporal proximity to the employee's complaints of discrimination. Id. at 1105-06. The pattern of discipline included a negative performance review, oral reprimands, the initiation of an investigation into the employee's conduct that resulted in a suspension without pay, and a recommendation that the employee be terminated. Id. Further, although the employee was disciplined for her infractions, her coworkers were not. Id. at 1106.

Unlike the employee in Bassett, Muor did not suffer an escalating pattern of adverse actions that occurred in close temporal proximity to her complaints of discrimination in March and April of 2009. The facts that Muor argues demonstrate a causal connection—the request that she keep her complaint of discrimination confidential; U.S. Bank's hiring of Brown as an International Banking Specialist; Bach's January 5, 2010, letter; U.S. Bank's decision to fill her position; U.S. Bank's failure to interview her for the mortgage department job; and U.S. Bank's offer of "downgraded" positions after filling her position—do not rise to the level of those recounted in Bassett. Moreover, other than the June 2009 request that Muor keep her discrimination complaint confidential, the alleged adverse actions that Muor relies on

-10-

began to occur approximately eight months after her protected activity, when U.S. Bank hired Brown. This gap between the bulk of the alleged adverse actions and Muor's protected activity vitiates Muor's contention that the temporal proximity gives rise to an inference of retaliatory motive. See Tyler v. Univ. of Ark. Bd. of Trs., 628 F.3d 980, 986 (8th Cir. 2011) ("As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation."). We thus conclude that Muor has failed to show a causal connection between her protected activity and U.S. Bank's alleged adverse employment action.[3]

## III. Conclusion

The judgment is affirmed.

_____

[3]Muor also argues that U.S. Bank constructively discharged her and that this constitutes an adverse employment action, but she has failed to create a genuine issue of material fact concerning whether there was a causal connection between her alleged constructive discharge and her protected activity.

-11-