**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**November 1, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MAGNUS, INC.,

　　　　Plaintiff - Appellant,

v.

DIAMOND STATE INSURANCE
COMPANY,

　　　　Defendant - Appellee.

No. 12-3091
(D.C. No. 6:10-CV-01422-KHV-JPO)
D. Kansas

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **MURPHY**, and **GORSUCH**, Circuit Judges.

---

I.　　**INTRODUCTION**

Appellant Magnus, Inc. ("Magnus") appeals the grant of summary judgment

in favor of Diamond State Insurance Company ("Diamond State") in this diversity

action. In its federal complaint, Magnus alleged Diamond State breached a

Commercial General Liability ("CGL") insurance policy it entered into with

Precision Design Products ("Precision") when it failed to defend and indemnify

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

Precision in a Kansas state lawsuit. The Kansas suit filed by Magnus contained allegations Precision violated an implied warranty of fitness, an implied warranty of merchantablility, and an express warranty when it manufactured a part used in archery equipment. Magnus and Precision entered into a settlement agreement wherein Precision assigned its claims against Diamond State to Magnus.

Diamond State moved for summary judgment in the federal action, arguing there was no coverage under the CGL policy and, thus, no duty to defend or indemnify. In support of its position, Diamond State asserted the damages alleged by Magnus in the Kansas suit were caused by Precision's intentional acts, not an accident. Thus, Diamond State argued, there was no "occurrence" triggering coverage. The district court agreed and granted Diamond State's motion.

Exercising jurisdiction pursuant to 28 U.S.C. § 1291, this court **reverses** the grant of summary judgment and **remands** the matter for further proceedings.

## II.    FACTUAL BACKGROUND

Magnus is engaged in the archery products business. Precision manufactures components for the archery industry. In 2001, Magnus contracted with Precision to manufacture aluminum adaptors, a component permanently glued to a broadhead which permits the  consumer to attach the broadhead to an arrow shaft. The record contains conflicting versions of the parties' agreement, but construed in the light most favorable to Magnus, it shows that Magnus

-2-

instructed Precision to manufacture the adaptors out of a hard-grade aluminum. Precision, however, intentionally manufactured the adaptors from a softer grade of aluminum and did not disclose this to Magnus.

Magnus asserts it began receiving complaints from customers in 2002 or 2003 that broadheads screwed onto arrow shafts using the adaptor supplied by Precision became permanently affixed to the arrow shaft, preventing removal of the broadhead. According to Magnus, this damage occurred a "multitude of times, damaging a multitude of hunting arrows owned by Magnus, Inc.'s customers and former customers, and rendering their hunting arrows either worthless or of very little value." Magnus claims this damage resulted directly from the soft aluminum used by Precision to manufacture the adaptors.

In February 2008, Magnus sued Precision in Kansas state court, alleging Precision "violated the implied warranty of fitness, implied warranty of merchantability and express warranty to the detriment of" Magnus. The state petition asserted Precision's failure to manufacture the adaptors to Magnus's specifications caused Magnus to suffer "loss of business reputation and loss of business." Precision, which had entered into a commercial general liability policy with Diamond State, notified Diamond State of the lawsuit on August 9, 2009. Diamond State promptly denied the claim. Precision thereafter confessed

judgment in the state suit in the amount of $284,519.75[1] and entered into a settlement agreement with Magnus, assigning its rights under the CGL policy to Magnus.

Magnus then brought this federal diversity action against Diamond State, alleging Diamond State breached its obligation to defend and indemnify Precision. Magnus sought reimbursement of the amount Precision paid to defend the Kansas state suit and $284,519.75 in damages resulting from Precision's adaptors. Diamond State moved for summary judgment, arguing, *inter alia*, the CGL policy did not provide coverage for damages flowing from Precision's use of the softer aluminum because its actions were intentional. Relying on *Maryland Casualty Co. v. Mike Miller Cos.*, 715 F. Supp. 321 (D. Kan. 1989), the district court agreed and granted Diamond State's motion. The court concluded the record showed Precision purposefully manufactured the adaptors from softer grade aluminum. The courted reasoned that the resulting damage alleged by Magnus, therefore, was not caused by an accident. Thus, there was no occurrence under the terms of the CGL policy and Diamond State had no duty to defend Precision against Magnus's claims. The district court's ruling also resolved Magnus's claim for indemnification. *See Glickman, Inc. v. Home Ins. Co.*, 86 F.3d 997, 1001 (10th Cir. 1996) (noting under Kansas law the duty to defend is

---

[1]According to Magnus's expert, the past and future loss of earnings suffered by Magnus totaled $284,519.75.

-4-

broader than the duty to indemnify). Magnus brought this appeal challenging the grant of summary judgment.

## III. DISCUSSION

### A. *Standard of Review*

This court reviews a grant of summary judgment de novo, applying the same standard as the district court. *Welding v. Bios Corp.*, 353 F.3d 1214, 1217 (10th Cir. 2004). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When determining whether a genuine dispute as to a material fact exists, all "justifiable inferences" are drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is appropriate, however, if the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

### B. *Occurrence Under The CGL Policy*

The parties agree that Magnus's claims are governed by the terms of the CGL policy and Kansas law. The CGL policy at issue here provides coverage, subject to various limitations and exclusions, for property damage or bodily injury which occurs during the policy period. Property damage must arise from an occurrence. An occurrence is defined as "an accident, including continuous or

repeated exposure to substantially the same general harmful conditions." The policy does not define the term "accident." Diamond State successfully argued before the district court that Magnus's damages arose from Precision's willful actions and, thus, there was no duty to defend because no accident triggered coverage under the CGL policy.

The problem with Diamond State's argument and the district court's ruling is that Kansas law is to the contrary. "In determining for insurance purposes whether the damages resulting from an insured's acts were accidental and therefore an occurrence under a policy," Kansas follows the rule that there is a duty to defend if an intentional act results in an unintended injury. *Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1245 (10th Cir. 2006); *see also Thomas v. Benchmark Ins. Co.*, 179 P.3d 421, 425 (Kan. 2008) ("Kansas recognizes, for example that an intentional act may nevertheless result in unintended injury."). Thus, the district court erred by concluding there was no occurrence under the CGL policy because the record shows Precision purposefully manufactured the adaptors from soft aluminum. The court failed to evaluate whether Precision's willful conduct resulted in an unintended injury.

Prior to 2008, Diamond State had no duty under the CGL policy to defend Precision in the Kansas state suit if Magnus's injuries were the natural and probable consequence of Precision's breach. *See Park Univ. Enters.*, 442 F.3d at 1245. Kansas, however, no longer follows the natural and probable consequences

test.  *Thomas*, 179 P.3d at 427-31 (Kan. 2008).  Seeking to more closely align Kansas with the majority view, the Kansas Supreme Court adopted a "revised test for intentional injury."  *Id*. at 431.  Under this revised test,[2] "[t]he insured must have intended both the act and to cause some kind of injury or damage.  Intent to cause the injury or damage can be actual or it can be inferred from the nature of the act when the consequences are *substantially certain to result from the act*."  *Id*.  (emphasis added).  The district court did not address whether the record demonstrates that Precision's intentional acts led to intended or unintended injuries under either the natural and probable consequences test or the substantial certainty test and the parties do not discuss the issue in their appellate briefs.  *See Vaughn v. Murray*, 521 P.2d 262, 269 (Kan. 1974) (identifying factors used by courts to determine whether to apply a judicial decision retroactively).  Thus, remand is necessary so the court can either conduct this analysis in the first instance or consider the other bases on which Diamond State asserts it was not required to defend or indemnify Precision.[3]

---

[2]Although the Kansas Supreme Court in *Thomas v. Benchmark Insurance Co.*, adopted the revised test in the context of an intentional act exclusion clause, the test is also applicable when determining if coverage exists.  *See Park Univ. Enters. v. Am. Cas. Co.*, 442 F.3d 1239, 1245 (10th Cir. 2006) (applying the former "natural and probable consequences" test to a claim there was no duty to defend because the insured's acts were intentional); *Harris v. Richards*, 867 P.2d 325, 327-29 (Kan. 1994) (same).

[3]Although we do not consider the issue in this appeal because the parties do not present it, a serious argument could be made that Diamond State had no duty

(continued...)

## IV. CONCLUSION

The order of the district court granting summary judgment in favor of Diamond State is **reversed** and the matter **remanded** for further proceedings not inconsistent with this opinion.

                                        ENTERED FOR THE COURT


                                        Michael R. Murphy
                                        Circuit Judge

---

[3](...continued)
to defend Precision because the CGL policy does not cover any of the damages claimed by Magnus in the Kansas state lawsuit. Property damage is defined in the policy to mean "*physical* injury to *tangible property*, including all resulting loss of use of that property" (emphasis added). Although Magnus asserts the adaptors caused property damage because they impaired the functionality of customers' arrows, it did not seek to recover such damages in the Kansas lawsuit. Instead, Magnus only sought to recover damages arising from "loss of business reputation and loss of business," which are damages to intangible property. *See Hamilton Die Cast, Inc., v. U.S. Fid. & Guar. Co.*, 508 F.2d 417, 419 (7th Cir. 1975) (concluding a CGL policy insuring against property damage caused by an occurrence did not cover damages to business reputation because those are "damages for injury to intangible property").